**Alicia Dianne WEST, Appellant,**

v.

**SMG, Appellee.**

No. 01–08–00720–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 27, 2010.

David L. Sheller, The Sheller Law Firm, Houston, TX, for Appellant.

Peter J. Bambace, Holm, Bambace LLP, Houston, TX, for Appellee.

Panel consists of Justices KEYES, SHARP, and MASSENGALE.

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Alicia D. West, sued SMG and six other defendants for negligence, gross negligence, and negligence per se after she was injured at a concert at Reliant Arena. The trial court granted SMG's no-evidence motion for summary judgment. West appeals, arguing that (1) SMG owed her a duty of protection against the harmful acts of a third party because it operated a venue for a public event and retained exclusive control of security; (2) the trial court erred in granting SMG's no-evidence motion for summary judgment on negligence; (3) the trial court erred in granting SMG's no-evidence motion for summary judgment on gross negligence; and (4) the trial court erred in denying West's motion for continuance.

We affirm.

## Background

On November 1, 2003, West attended a concert by the bands "A Perfect Circle" and "The Icarus Line" at Reliant Arena in Houston, Texas. The Icarus Line performed first. During its performance, The Icarus Line (hereinafter "the band") was booed. It retaliated by spitting on the audience and subsequently by hurling water bottles into the crowd.[1] One of these bottles struck West on the side of the head. She fell to the concrete floor and suffered injuries. West contends she is "permanently disabled and unable to work, drive, go to school or care for herself." SMG operated the Reliant Park for Harris County. It licensed Reliant Arena to Pace Concerts (Pace) for this concert, and, by contract with Pace, it required the use of Contemporary Services Corporation (CSC) for security for the concert.

On November 1, 2005, West filed suit against the band, its individual members, Clear Channel Communications, Inc., Clear Channel Entertainment–Exhibits, Inc., Pace Concerts, GP Inc., Contemporary Services Corporation, Inc., Hyatt Corporation, Inc., Aramark Corporation, Inc., and SMG.[2] In her amended original petition, West claimed that SMG's negligence, gross negligence, and negligence per se in failing to provide adequate security for the performance by The Icarus Line caused her injury. SMG denied all of West's claims.

■ On July 31, 2006, SMG filed a no-evidence motion for summary judgment, claiming that West had not produced any evidence to indicate that SMG was negligent, grossly negligent, or negligent per

---

1. West contends the water bottles contained ice, not liquid water.

2. SMG is the successor entity to LMI/HHI, Ltd., the firm that managed Reliant Park at the time of the concert. Like the parties, we refer to SMG and not LMI/HHI.

se.[3] In its motion, SMG argued that (1) West could not "demonstrate that there is any evidence to support her negligence cause" because she "cannot put forth any evidence that ... SMG owed [her] a legal duty"; (2) West had not produced any evidence to support a showing of gross negligence; and (3) there was no evidence that SMG had violated a statute, and therefore there was no evidence for her claim for negligence per se.[4]

West responded to SMG's motion on January 17, 2007, claiming that she had produced summary judgment evidence sufficient to support her claims of negligence and gross negligence.[5] Specifically, West argued that her summary judgment exhibits showed that, because SMG through its contract with its agent CSC retained control over security for the concert, SMG owed a duty to West to protect her from harmful acts by the band, that SMG knew or should have known that the band posed an unreasonable risk of harm, and that it failed to warn her of the dangers or take action to increase security, and thus SMG is liable to her for her injuries.

West produced 12 exhibits as evidence of her claims: (1) CSC's employee handbook; (2) the incident report generated from West's injury; (3) the contract between SMG and CSC; (4) the deposition of Richard A. Welsh, a branch manager for CSC; (5) the deposition David A. Reed, CSC's event manager for this concert; (6) an affidavit from West; (7) an affidavit from West's mother; (8) the "Artist Agreement Addendum" between Pace and the Icarus Line; (9) the licensing agree-ment between SMG and Pace that allowed Pace to put on the concert; (10) the "Artist Agreement Addendum" between Pace and "A Perfect Circle," the band that performed after "The Icarus Line"; (11) the deposition of Gerald L. Eversole, in-house counsel for SMG; and (12) an affidavit from Jon W. Wanger, one of West's attorneys, that consists principally of materials downloaded from the band's website.

In her response, West also filed a motion for a continuance, arguing that the trial court should not rule on SMG's no-evidence motion for summary judgment until she could depose Efrem Faulkner, the CSC employee who drafted the incident report and who was, at that time discovery was being conducted, serving with the United States military overseas. She stated that she anticipated that Faulkner would testify based on his "particular knowledge and observations of the events, actions, and inactions that took place prior to and during the event at Reliant Arena when Plaintiff was injured." The motion was not verified.

The trial court heard oral argument on SMG's no-evidence motion for summary judgment on January 29, 2007, but it did not enter judgment at that time. On March 31, 2008, the trial court held a status conference and set SMG's no-evidence motion for summary judgment for final submission on April 14, 2008. On April 7, 2008, West filed a motion requesting another continuance on the trial court's ruling on SMG's motions for summary judgment. In this motion, she contended that she needed the continuance so that

[3] "Negligence per se is a common-law doctrine that allows courts to rely on a penal statute to define a reasonably prudent person's standard of care." *Reeder v. Daniel*, 61 S.W.3d 359, 361–62 (Tex.2001).

[4] SMG also filed a traditional motion for summary judgment asserting the same claims. The trial court did not rule on it, and West appeals only the trial court's ruling on the no-evidence summary judgment.

[5] West's response did not address her claim of negligence per se and she has not brought forth that issue on appeal.

she could depose an additional eight witnesses, who, she contended, would testify that SMG was negligent in failing to establish regulations and to train employees to protect the audience members from "attacks by performers." Faulkner was not among those she proposed to depose. SMG objected to West's request for a continuance. It based its objection on the fact that West had already had 29 months to depose those witnesses but had not made any prior request to do so.[6] The trial court denied West's request for more time for discovery. It granted SMG's no-evidence motion for summary judgment on May 21, 2008.

On June 5, 2008, SMG filed a motion to sever. On that same day, West filed a motion asking the trial court to reconsider its decision to grant SMG's no-evidence motion for summary judgment, and, without leave of court, she amended her petition, adding new claims under the Deceptive Trade Practices Act. On July 25, 2008, the trial court granted SMG's motion to sever. West then filed an objection to the trial court's failure to rule on West's motions for continuance and her amended petition. SMG responded, arguing that the trial court's grant of summary judgment for SMG implicitly denied West's motion for continuance.

On August 18, 2008, West filed a notice of appeal of the trial court's no-evidence summary judgment on her negligence and gross negligence claims and its denial of a continuance.

### Finality of Judgment

■ As a jurisdictional threshold matter, we first address the finality of the judgment in favor of SMG. *See Waco Indep. School Dist. v. Gibson*, 22 S.W.3d 849, 853 (Tex.2000) (stating that appellant

courts may raise subject-matter jurisdiction sua sponte). On July 25, 2008, the trial court granted SMG's motion to sever "all of plaintiff's claims and causes of action brought against SMG" and assigned the severed claims a new cause number. On August 18, 2008, West filed an objection to the trial court's failure to rule on her motions for continuance and on her amended petition, arguing that the failure to grant the continuance and to rule on the live pleading was error and therefore the summary judgment was not final. SMG's response correctly pointed out that the order granting SMG's motion for summary judgment impliedly denied West's motion for continuance. *See Carter v. MacFadyen*, 93 S.W.3d 307, 310 n. 2 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). It also correctly pointed out that the trial court need not rule on an amended petition filed after the entry of summary judgment. *See Taylor v. Sunbelt Mgmt., Inc.*, 905 S.W.2d 743, 745 (Tex.App.-Houston [14th Dist.] 1995, no writ); *Nguyen v. JP Morgan Chase Bank*, No. 14–07–00086–CV, 2008 WL 2130430, at *3 (Tex.App.-Houston [14th Dist.] May 22, 2008, no pet.) (mem.op.).

■ We conclude that the summary judgment in favor of SMG denied all relief not granted by the judgment and was final as to all of West's claims against SMG. Therefore, we do have jurisdiction in this appeal over all of West's claims as to SMG.

### No–Evidence Summary Judgment

#### A. Standard of Review

We review grants of summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). A no-evidence motion for summary judgment

6. West contended that she sent SMG a letter requesting depositions of these newly identified people on March 6, 2008. SMG claimed it never received the letter.

must be granted if, after adequate time for discovery has passed, the moving party asserts that there is no evidence of one or more specified elements of a claim or a defense on which the adverse party would have the burden of proof at trial and the respondent produces no summary judgment evidence raising a genuine issue of material fact on those elements. TEX.R. CIV. P. 166(a)(i); *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex.2006).

Essentially, a party that files a no-evidence summary judgment motion has moved for a pretrial directed verdict. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581 (Tex.2006). When the movant files its motion in proper form, the burden shifts to the nonmovant to defeat the motion by presenting evidence that raises an issue of material fact regarding the elements challenged in the motion. *Id.* at 582. We review the evidence presented by the summary judgment record in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005)). The evidence produced must amount to more than a scintilla in order to raise a genuine issue of material fact. *Madison v. Williamson*, 241 S.W.3d 145, 151 (Tex. App.-Houston [1st Dist.] 2007, pet. denied). Evidence amounts to more than a scintilla if it enables reasonable and fair-minded people to differ in the conclusions to be drawn from it. *See id.* at 151–52. Evidence fails the scintilla test if it gives rise only to surmise or suspicion about the fact to be proven. *See id.* at 152.

When, as here, a summary judgment does not specify the grounds on which it was granted, the appealing party must demonstrate that none of the proposed grounds is sufficient to support the judgment. *Rogers v. Ricane Enters.*, 772 S.W.2d 76, 79 (Tex.1989); *Tilotta v. Goodall*, 752 S.W.2d 160, 161 (Tex.App.-Houston [1st Dist.] 1988, writ denied). Conversely, we will affirm the judgment if any one of the theories advanced in the motion is meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

## B. Liability of Premises Owner for Harmful Acts of Third Parties

In her first three issues, West argues that the trial court erred in granting SMG's no-evidence motion for summary judgment because (1) SMG operated a public venue and retained exclusive control of security for the event and, therefore, it owed her a duty of ordinary care; (2) she presented summary judgment evidence supporting each of the elements of her negligence claim; and (3) she presented summary judgment evidence supporting her gross negligence claim.

A showing of negligence requires a plaintiff to establish three elements: (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *W. Inv., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex.2005); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). Duty is a threshold question in a negligence case. *Id.* Whether a duty exists is a question of law for the court to decide from the facts surrounding the occurrence in question. *Id.* If the trial court determines that there is no duty, the inquiry regarding negligence ends. *See Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex.1998).

"A complaint that a landowner failed to provide adequate security against criminal conduct is ordinarily a premises

liability claim." *Timberwalk Apartments, Partners, Inc. v. Cain,* 972 S.W.2d 749, 753 (Tex.1998). "Premises liability is a special form of negligence where the duty owed to the plaintiff depends upon the status of the plaintiff at the time the incident occurred." *W. Inv., Inc.,* 162 S.W.3d at 550. In the case of an invitee, such as West, a premises liability inquiry focuses on whether the defendant proximately caused the plaintiff's injuries "by failing to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition that it knew about or should have known about." *Id.* By contrast, "[r]ecovery on a negligent activity theory requires injury by or as a contemporaneous result of the activity itself—not a condition created by the activity." *Mayer v. Willowbrook Plaza Ltd.,* 278 S.W.3d, 901, 909 (Tex.App.–Houston [1st Dist.] 2009, no pet.) (citing *Timberwalk,* 972 S.W.2d at 753; *Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992)). Negligence and premises liability are independent theories of recovery, and the Texas Supreme Court has held, "We have rejected attempts to blur the distinctions between [negligence and premises liability] claims." *State v. Shumake,* 199 S.W.3d 279, 284 (Tex.2006); *Clayton W. Williams, Jr., Inc. v. Olivo,* 952 S.W.2d 523, 529 (Tex.1997).

### 1. Duty of Premises Owner to Protect Against Assaultive Acts of Third Parties

Here, as in *Timberwalk,* West contends that SMG's failure to provide adequate security measures created an unreasonable risk of harm from the band's assaultive conduct that SMG knew or should have known about and failed to correct. This is a premises liability claim predicated on SMG's duty to provide security for the concert adequate to protect West from the band's assault on attendees.

 Generally, there is no legal duty to protect another from a third person's criminal acts. *Timberwalk,* 972 S.W.2d at 756. However, when one controls the premises, he has a duty to use ordinary care to protect invitees from "criminal acts of third parties if he knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee." *Id.* (quoting *Lefmark Mgmt. Co. v. Old,* 946 S.W.2d 52, 53 (Tex.1997)); *see also Del Lago Partners, Inc. v. Smith,* 307 S.W.3d 762, 767–68 (Tex.2010). This exception applies to a landlord who retains control over the security and safety of the premises. *Del Lago Partners,* 307 S.W.3d at 767–68; *Timberwalk,* 972 S.W.2d at 756. This duty developed from the notion that the party with the power to control expulsion is in the best position to protect against harm. *Del Lago Partners, Inc., v. Smith,* 206 S.W.3d 146, 153 (Tex.App.-Waco 2006), *aff'd,* 307 S.W.3d 762 (Tex.2010).

 A duty of a person who owns or controls property to protect persons on the property from the risk of criminal conduct exists, however, only when the risk is so great that it is both unreasonable and foreseeable. *Timberwalk,* 972 S.W.2d at 756. "The foreseeability of an unreasonable risk of criminal conduct is a prerequisite to imposing a duty of care on a person who owns or controls premises to protect others on the property from the risk." *Id.* Once this prerequisite has been satisfied, the parameters of the duty must be determined. *Id.* Foreseeability is the beginning of the determination of the extent of the duty to protect against a third party's criminal acts. *Id.* "Whether such [a] risk was foreseeable must not be determined in hindsight but rather in light of what the premises owner knew or should have known before the criminal act occurred." *Id.* at 757. "Foreseeability requires only that the general danger, not the exact sequence of events that produced

the harm, be foreseeable." *Id.* at 756 (quoting *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996)).

"When the 'general danger' is the risk of injury from criminal activity, the evidence must reveal 'specific previous crimes on or near the premises' in order to establish foreseeability." *Timberwalk,* 972 S.W.2d at 756 (quoting *Walker,* 924 S.W.2d at 377). Factors a court should consider when determining whether third party criminal conduct was foreseeable include: (1) whether any criminal conduct previously occurred on or near the property; (2) how recently such conduct occurred; (3) how often such conduct occurred; (4) how similar the prior conduct was to the conduct that occurred on the property; and (5) what publicity surrounded the occurrences to indicate that the land owner/occupier knew or should have known about them. *Id.* at 757.

In addition, the Texas Supreme Court has recently held, in *Del Lago Partners,* that a property owner and operator with actual and direct knowledge that violence is imminent has a duty to protect an invitee from imminent assaultive conduct by a fellow patron. 307 S.W.3d at 769–70 (finding nature and character of bar at closing time after ninety minutes of heated altercation between intoxicated patrons to be factor in foreseeability of assaultive behavior by patrons). The court recognized that the nature and character of the premises can be a "factor that makes criminal activity more foreseeable." *Id.* at 767–68. More specifically, it recognized that criminal conduct may become foreseeable because of immediately preceding conduct. *Id.* The court reasoned that "since the landowner 'is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring *or are about to oc-*

*cur.*'" *Id.* at 769 (quoting RESTATEMENT (SECOND) OF TORTS § 344 cmt. f (1965)) (emphasis added in *Del Lago* ). However, "[i]n certain situations ... the actor may have sufficient knowledge of the *immediate circumstances* ... to foresee that party's misconduct." *Id.* (quoting RESTATEMENT (THIRD) OF TORTS § 19 cmt. f (2010)) (emphasis added in *Del Lago* ). The court concluded that "when a property owner 'by reason of location, mode of doing business, or observation or past experience should reasonably anticipate criminal conduct on the part of third persons, ... [the owner] has a duty to take precautions against it.'" *Id.*

West contends that SMG knew or should have known when it required Pace to hire CSC to provide security for the concert that members of the band would foreseeably commit an intentional act of assault while performing at Reliant Park that would require additional measures to be in place to protect invitees. West also contends that SMG controlled the means and details of CSC's security for the concert, and, in that capacity, it had a duty to provide adequate security for concert-goers, and thus it had a duty to require CSC to increase security as assaultive conduct by the band became imminent.

West states that SMG should have foreseen the band's bottle throwing because CSC's employee handbook instructed its employees that they should "not allow guests to throw any type of projectile" and "[w]hen an object goes into the seating area you must go and check on the guest to see if they need medical attention." She also points to the contract between Pace and the other band that performed that night, A Perfect Circle, which required that "all beverages sold in venue be poured into cups. No bottles, plastic or other should be allowed into the hands of patrons." West directs us to a deposition by

Richard Welsh, the CSC branch manager, who testified that he had "seen water bottles thrown from the stage of rock concerts a few times." She also directs us to a deposition by David Reed, a member of CSC's security team, in which he testified that, during the band's performance, he "witnessed the lead singer toss a bottle. He had been tossing bottles of water into the audience. And I called the security manager of the show to decide and said, 'look this has got to stop.'" Finally, she directs us to a statement on the band's website in 2004: "Approach at your own risk, for there is always a chance of having a limb or an organ picked at in the shuffle of it all." The incident made the basis of this suit, however, occurred in 2003, before the date of the statement on the website.

None of this evidence amounts to more than a scintilla of evidence that SMG knew or should have known when it signed the contract with Pace requiring CSC to be hired to provide security that extra security measures would be required to protect invitees from the assaultive acts of the band. The summary judgment evidence cited by West is no evidence: (1) that water bottles had previously been thrown into the crowds by performers at Reliant Park; (2) that assaults by performers on invitees had occurred at Reliant Park in close temporal proximity to the events complained of; (3) that such conduct was frequent; (4) that it was similar to that which occurred; or (5) that SMG knew or should have known of any publicity surrounding assaultive behavior by the band from which it was foreseeable that the band would assault the crowd. *See Timberwalk*, 972 S.W.2d at 757. We conclude that, as a matter of law, West has failed to provide evidence of the foreseeability of the band's criminal actions that would impose upon SMG a duty to take extra security precautions in advance of the concert to protect attendees beyond requiring Pace to hire CSC.

### 2. Responsibility of Premises Owner for Negligence of Agent in Failing to Provide Security

West also contends that SMG exercised control over the means and details by which CSC provided security at concerts at Reliant Arena. She contends that, although SMG subcontracted security during the concert to CSC, it retained control over the means and details of CSC's provision of security during the concert, and, therefore, SMG was a principal and CSC was its agent rather than an independent contractor. She argues that CSC, as an agent for SMG, was acting within the scope of the general authority given by SMG and under its direction and had a duty to increase security to protect invitees from the band's assaultive conduct, which was foreseeable under the circumstances, that CSC breached its duty, and therefore liability can be imputed to SMG, as CSC's principal.

Generally, the individual or entity that hires an independent contractor is not vicariously liable for a tort or an act of negligence committed by the independent contractor. *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947–48 (Tex. 1998) (citing *Enserch Corp. v. Parker*, 794 S.W.2d 2, 6 (Tex.1990)). However, when the hiring entity retains control over the specific details and methods by which the task is to be accomplished, the independent contractor acts as an agent and the individual or entity that hired the contractor can be held to be vicariously liable for the torts or negligent acts of the agent. *Id.* By contrast, when one has the right to control the end sought to be accomplished but not the means and details of how it should be accomplished, the person employed acts as an independent contractor and not as an agent, and the person

entity that hired the contractor is not liable for the contractor's negligent acts. *See Olympia Capital Assocs. v. Jackson,* 247 S.W.3d 399, 413 (Tex.App.-Dallas 2008, no pet.); *Ltd. Logistics Servs., Inc. v. Villegas,* 268 S.W.3d 141, 153 (Tex.App.-Corpus Christi 2008, no pet.); *see also Walker Ins. Servs. v. Bottle Rock Power Corp.,* 108 S.W.3d 538, 549 (Tex.App.-Houston [14th Dist.] 2003, no pet.).

In an attempt to establish SMG's control over the means and details of the provision of security at Reliant Park, West points to the contract between SMG and its co-defendant Pace, the entity that promoted the concert at issue, which required Pace to hire CSC. She also cites to a portion of a paragraph of Paragraph F of the Reliant Park General Rules and Regulations, which in its entirety states:

> *The Facility retains exclusive* Electrical, Food & Beverage Services, *Security,* Medical, Ticket, Office, Event Staff and Housekeeping *contractors and it is mandatory that the Licensee* and Licensee's exhibitors and/or attendees *obtain the Services of these contractors* exclusively as required in conducting your/their business in the Facility.

(Emphasis added). CSC was the security contractor to which the contract referred.

 The fact that SMG required Pace to hire CSC merely establishes, however, that CSC was the exclusive contractor for security services at Reliant. It does not establish that SMG retained exclusive control over the details and manner of security CSC provided at Reliant during the band's concert. Thus, this is no evidence that CSC was the agent of SMG in responding to security needs that arose on-site, as necessary to establish SMG's liability for any act or omission of CSC personnel present at the concert.

West also points to the CSC employee manual, which instructed CSC employees,

"No guest shall be ejected from the venue for minor infractions of policies WITHOUT ADEQUATE WARNING and CSC and/or SMG management approval. Should you the need [*sic*] arise to eject a guest, please notify your supervisor. Again, CSC and SMG management are the final decision makers regarding an ejection." This passage in *CSC's* employee manual to its security personnel is, also, however, no evidence that *SMG* actually exercised control over the ejection of guests "for minor infractions of policies," much less exercised control over CSC's response to emergency situations. In particular, it is no evidence that CSC actually looked to SMG during the band's concert to instruct it how to control the escalating assaultive conduct of the band, whose members were not "guests" whom security personnel had decided to eject for minor infractions of policies.

Finally, as evidence of on-site control over the details and means of CSC's provision of security, West refers us to the deposition testimony by CSC's branch manager Welsh that, in advance of an event, SMG would meet with CSC and "tell us how many ticket-takers they want, how many ushers they want and how many on-staff security they want." She also points us to the deposition testimony of Reed, a member of CSC's security team and the event manager for the concert who was responsible for controlling the crowd that, in fact, such a meeting took place before this event with SMG's event coordinator, CSC's event coordinator, and the security managers for the bands.

Reed also testified that during the band's performance he received a call over his radio "that a person was down on the floor" and a call from his CSC supervisor, Efrem Faulkner, who was on the floor "getting the information on the incident that had happened." He was told West

had been hit by a bottle of water from the stage area. He did not know of any other incidents that occurred that evening. However, he witnessed the lead singer of the band toss a bottle. "He had been tossing bottles of water into the audience." Reed called the security manager for the band and stated, "Look this has got to stop," just before he was informed by Faulkner that West had been hit. He testified that up until that point he had not had a problem with the crowd. Again, however, none of this is evidence that *SMG* controlled the details of the provision of security on-site during the performance.

### 3. Duty of Premises Owner with Actual and Direct Knowledge of Imminent Harm to Require Increased Security

■■■ Finally, there is no evidence that SMG "had actual and direct knowledge" that a violent assault on the concert-goers by the band was imminent, as required to hold a premises owner liable for the violent acts of third parties on invitees. *See Del Lago Partners*, 307 S.W.3d at 769–70. All of the evidence cited goes to CSC's on-site control over the means and details of security and CSC's knowledge of the band's conduct. There is no evidence that this knowledge was communicated to SMG or that there was even time to communicate it or that it had been communicated, SMG would have had the responsibility to direct CSC as to how to proceed.

The situation in this case is wholly unlike that in *Del Lago Partners*. In that case, the evidence showed that Del Lago both staffed its bar and provided its own security. 307 S.W.3d at 764–65. Del Lago's staff continued to serve drinks to drunk patrons during "ninety minutes of yelling, threatening, cursing, and shoving" between them without calling security until after the fight started. *Id.* at 765–66. Del Lago's security employees, in turn, while aware that the bar was crowded, failed to

visit it during the entire ninety minutes, although they customarily visited the bar five to eight times a night and had ejected a drunk fraternity member the night before. *Id.* at 770–71.

The supreme court concluded that the jury could have found that Del Lago bar staffers were fully aware of the events transpiring in the bar and nevertheless unreasonably neglected to notify security or to bring the situation under control and that the bar staffers were not provided the training and information to call security. *Id.* at 771–72. The court also concluded that the jury could also have found that Del Lago acted unreasonably in failing to provide a "security presence at closing." *Id.* By contrast, there is no evidence in the instant case that SMG employees had actual and direct knowledge that assaultive conduct was imminent, or that any SMG personnel acted negligently in unreasonably failing to respond the band's assaultive conduct or to require CSC personnel to do so.

We hold that West has failed to show that SMG knew or should have known when it required Pace to hire CSC of foreseeable assaultive acts by the band or others that would require extra security to protect concert-goers. Nor has West shown that SMG controlled the means and details of CSC's provision of security for the concert on-site during the performance and had actual and direct knowledge that assaultive conduct by the band against concert-goers was imminent and that increased security was required. We hold therefore, that, as a matter of law, SMG had no legal duty to protect West from the band's assaultive acts. Because West has failed to bring forth sufficient evidence on the element of duty, a necessary element of her negligence and gross negligence claims, we further hold that the trial court

did not abuse its discretion in granting SMG's motion for summary judgment.

We overrule West's first, second, and third issues.

## Failure to Grant Continuance

In her fourth issue, West contends that the trial court erred in granting SMG's motion for summary judgment without ruling on her motion for a continuance to allow her to depose Faulkner, the security supervisor for CSC responsible for the area in which West was seated. West contends that she could not depose Faulkner because he had been deployed by the United States Military. West filed her motion for continuance on January 17, 2007, and the trial court impliedly overruled it by not ruling on her motion and granting SMG's no-evidence summary judgment.

■■■■■ A trial court may order a continuance of a summary judgment hearing if it "appears from the affidavits of the party opposing the motion [for summary judgment] that he cannot for reasons stated present by affidavit facts essential to justify his opposition." *Joe*, 145 S.W.3d at 161. A trial court's denial of a motion for continuance and its determination that there has been adequate time for discovery are reviewed under an abuse of discretion standard. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002) (stating that denial of motion for continuance is reviewed for abuse of discretion standard); *Rest. Teams Int'l, Inc. v. MG Sec. Corp.*, 95 S.W.3d 336, 339 (Tex. App.-Dallas 2002, no pet.) (stating that trial court's determination that there has been adequate time for discovery is reviewed for abuse of discretion). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner "without reference to any guiding rules or prin-

ciples." *See Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex.1999).

■■■■■ "When a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance." *See Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex.1996); *see also* Tex.R. Civ. P. 166a(g), 251, 252. The affidavit or motion must describe the evidence sought, state with particularity the diligence used to obtain the evidence, and explain why the continuance is necessary. *Rocha v. Faltys*, 69 S.W.3d 315, 319 (Tex. App.-Austin 2002, no pet.). If these requirements are met, three non-exclusive factors are considered in determining the propriety of a trial court's ruling on a motion for continuance: (1) the length of time the case has been on file; (2) the materiality and purpose of the discovery sought; and (3) whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *Joe*, 145 S.W.3d at 161. While no bright line rule exists regarding the length of time a case has been on file and the propriety of denying a motion for continuance, Texas courts have overruled such motions in cases on file for fewer than nine months. *See Rest. Teams Int'l*, 95 S.W.3d at 339–40.

■■■■■ West filed a motion for continuance on the trial court's ruling on SMG's motion for summary judgment on January 17, 2007, seeking to depose Efrem Faulkner, a CSC employee. West's motion principally contended that Faulkner "has particular knowledge and observations of the events, actions, and inactions that took place prior to and during the event at Reliant Arena when Plaintiff was injured."

West's case had been on file for a year and a half, since November 2005, when she filed her motion for continuance. Al-

444

though the trial court heard oral argument on SMG's motion for summary judgment on January 29, 2007, without granting the continuance, the court did not deem the motion for summary judgment finally submitted until April 14, 2008—14 months after SMG filed it and 29 months after West filed suit—and did not grant summary judgment until May 21, 2008. During this time, there is no evidence that West made any attempt to depose Faulkner. Rather, undermining her own argument, she abandoned that continuance and, instead, on April 7, 2008, filed a second motion for continuance, seeking seven other depositions, just one week before the motion for summary judgment was set for final submission. By the time of final submission of SMG's summary judgment motion, West's case had been on file for 29 months. Her motions for continuance provided no information regarding any efforts she had made to secure any of the depositions requested in a timely manner. Nor does the record contain any reference to the particular knowledge and observations of knowledge Faulkner or the other persons for whose deposition a continuance was requested that would have supplied proof of the elements of West's negligence claims against SMG that West was unable to produce otherwise. We conclude that West failed to satisfy the factors that would have justified a continuance. *See* *Rocha,* 69 S.W.3d at 319; *Joe,* 145 S.W.3d at 161.

We hold that the trial court did not abuse its discretion in denying West's motion for continuance. We overrule West's fourth issue.

### CONCLUSION

We affirm the judgment of the trial court.