**Opinion issued December 7, 2017**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-16-00934-CV

———————————

**JIMAREE PARRISH, Appellant**

**V.**

**SMG, Appellee**

---

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Case No. 2015-18721**

---

## MEMORANDUM OPINION

In this personal injury suit, Jimaree Parrish sued SMG for negligence and premises liability after she allegedly tripped over the corner of a rubber floor mat at the Houston Livestock Show and Rodeo. SMG moved for traditional and no-

evidence summary judgment on Parrish's claims, and the trial court rendered summary judgment in SMG's favor. In three issues, Parrish argues that: (1) the trial court erroneously granted no-evidence summary judgment because she raised a fact issue that SMG owed her a duty; (2) the trial court erroneously granted no-evidence summary judgment because she raised a fact issue that SMG had knowledge of a dangerous condition on the property; and (3) a need exists for the good faith extension of the law concerning the duty that a lessor owes to an invitee of its lessee.

We affirm.

## Background

The Harris County Sports & Convention Corporation owns NRG Park, which is composed of NRG Stadium, NRG Center, and NRG Arena. It hired SMG as its management company to oversee the day-to-day operations of the complex. Pursuant to a lease agreement with Harris County, the Houston Livestock Show and Rodeo, Inc. ("the Rodeo") operates the Houston Livestock Show and Rodeo at NRG Park for three weeks every March.

NRG Center has concrete floors, and the Rodeo's lease agreement obligates SMG to install rubber mats on the floors. When the Rodeo is not operating, SMG rolls up the rubber mats and stores them. During the preparation for the event, the Rodeo typically directs SMG where to place the floor mats. SMG unrolls the mats and uses industrial duct tape to tape the ends of the mats to each other. SMG does

2

not use any kind of adhesive between the bottom of the mats and the concrete floor. Once the event starts, contractually the Rodeo bears the responsibility for maintaining the mats, but SMG personnel assist, and when Rodeo and SMG personnel see pieces of duct tape along the ends of the mats that have lost adhesion, the workers will replace the tape. Before each yearly event, SMG provides the Rodeo with twenty to twenty-five cases of duct tape to use on the ends of the floor mats throughout the event.

On March 15, 2014, Jimaree Parrish attended the Rodeo with her daughter and other relatives. She alleged that, as she was walking in NRG Center, a floor mat had curled up at the corner and was hidden from view by sawdust and wood shavings on the floor. She tripped over the corner of this mat. She fell to the ground and lost consciousness. She also fractured her left orbital socket, fractured her left arm, tore her left rotator cuff, and injured her knee, requiring knee replacement surgery.

Parrish sued the Rodeo on March 31, 2015, and asserted causes of action for negligence and premises liability. Parrish alleged that the Rodeo was negligent by "failing to keep the floor panels level on the grounds where people walk," by "covering the floor in large amounts of sawdust blocking from vision defects in the floor paneling," by "failing to properly maintain and secure the floor panels on the grounds where people walk," by "failing to remove the sawdust from the floor so that defects in the floor could be seen," and by "failing to post signs warning of an

3

uneven floor." Parrish also alleged that a condition on the premises posed an unreasonable risk of harm and that the Rodeo knew or reasonably should have known of the danger, but it failed to adequately warn her of the condition or to make the condition reasonably safe. In October 2015, Parrish amended her petition to assert the same causes of action against SMG, as well as against the Rodeo.[1]

SMG moved for traditional and no-evidence summary judgment. SMG argued that it did not owe Parrish a duty because SMG was not in possession of NRG Park at the time of Parrish's injury; instead, the Rodeo had leased the premises and was in control. It also argued that, to the extent Parrish pleaded a negligent activity claim, she could present no evidence of a negligent activity that occurred contemporaneously with her injury. SMG also argued that summary judgment was proper on Parrish's premises liability claim because Parrish could produce no evidence that SMG had actual or constructive knowledge of a dangerous condition on the premises. Specifically, SMG pointed to (1) deposition testimony from Michael DeMarco, the Rodeo's Executive Director of Operations, who testified that this particular incident was the first time a Rodeo patron had tripped on the floor mats, and to (2) deposition testimony from Richard Fredette, SMG's Director of Operations at NRG Park, who testified that, although he was aware of prior instances

---

[1] Ultimately, Parrish reached a settlement agreement with the Rodeo, and she nonsuited her claims against the Rodeo. The Rodeo is therefore not a party to this appeal.

in which the duct tape holding the floor mats down had lost its adhesion and come undone, he was not aware of prior instances in which the floor mats then rolled up as a result.

Parrish filed a response to SMG's summary judgment motion. Parrish argued that SMG knew the duct tape holding down the floor mats would fail and, thus, both SMG and the Rodeo had personnel walking through NRG Park replacing duct tape throughout the event. She argued that SMG "had a superior knowledge of the risk over the patrons attending the stock show who had no way to know the installation of the flooring was improper and posed an unreasonable risk of failure." She also argued that SMG had a duty to install the floor mats in conformity with the manufacturer's specifications and in a reasonably prudent manner, a duty to "take affirmative action to control the dangerous condition of failed flooring that was created by SMG's unreasonable and improper installation of the flooring," a duty to warn patrons that the mats were "likely to stick into the air and create a tripping hazard," a duty not to cover the floor mats with wood shavings that could obscure areas where the duct tape had failed, and a duty to warn patrons that the wood shavings could obscure dangerous floor conditions.

Parrish also argued that the rule cited by SMG, that a lessor is not responsible for the condition of the premises once it turns the property over to a lessee, has an exception, namely if the lessor makes repairs to the leased premises, the lessor owes

a duty to use reasonable care in making those repairs. She argued that SMG, by replacing duct tape, "was proactively making repairs throughout the stock show," but it was making those repairs "in the same negligent manner as the original installation" of the floor mats.

Parrish also argued that "[b]ecause SMG installed the flooring in an unreasonable manner and against the manufacturer's recommendations, it created the dangerous condition and by Texas law, it is presumed to have knowledge of the condition." She pointed to the depositions of Fredette and DeMarco, in which they acknowledged that both SMG and Rodeo personnel walked the premises and replaced duct tape that had lost its adhesion. She argued that "each defendant knew the duct tape would fail and were always looking to see what areas were failing on any given day."

As summary judgment evidence, Parrish attached her affidavit, as well as the affidavits of Jennifer Wofford, her daughter, Jack Levy, the husband of one of Parrish's cousins, and David Parker, Levy's friend, all of whom were at the Rodeo on the date of the incident. Wofford averred:

> As we were walking into the building where the animals were being kept, I noticed wood shavings covering the floor and I could feel we were walking on some type of rubber flooring. As we continued walking, suddenly and without any warning Jimaree fell forward to the floor and was seriously injured. Blood oozed from her head and she was totally unconscious. I immediately began to call for help and tried to attend to her, but she was not responsive at all. Shortly afterwards, emergency personnel came and started working on her.

6

At this time I looked to see what had caused her to fall and noticed that a corner piece of a rubber floor mat was sticking into the air, covered by the wood shavings, where Jimaree had just walked. . . .

I left the arena with Jimaree in the ambulance, and my son remained at the stock show. A couple of hours later, I got transportation back to the stock show. At that time, I noticed the corner mat which had been sticking in the air was now taped down so that it was no longer sticking up into the air.

Parker and Levy both averred that, after Parrish was transported to the hospital, they saw Rodeo personnel "come and tape down the portion of the rubber flooring that had been sticking into the air."

Parrish also attached the affidavit of Jack Kelley, an engineer who has experience in designing and building laboratories, who provided an opinion concerning the method that SMG used to secure the floor mats. Kelley stated that "[b]ecause the rubber mats are rolled up and stored by stacking them one on top of another for almost the entire year, when the mats are finally unrolled to be installed on the arena floor, the ends will tend to curl up, seeking to return to the rolled shape they have been in for most of the year." Kelley researched installation methods for rolled rubber floor mats and found that "[t]he most common installation method for a temporary project such as the stock show is the use of double sided tape between the permanent flooring and the rolled rubber mats."

Kelley did not find any manufacturers that recommended the use of duct tape, a cloth-backed tape, to secure the floor mats. Kelley stated that cloth material

7

absorbs liquids, which break down the adhesive materials within the tape. The duct tape used by SMG and the Rodeo "was in constant contact with human and animal traffic, wood shavings, animal feces and urine, as well as spilled human drinks," which "would have caused the duct tape to lose its adhesive properties and loosen, resulting in the rolled rubber mats curling up at the ends where the duct tape would have lost its grip." Kelley opined that using duct tape was contrary to the manufacturer's recommendations and that "the rubber mats curling up in an area of frequent and constant human traffic created an unreasonably dangerous situation which would pose a significant risk of causing a person to trip and fall."

Kelley also averred that SMG and the Rodeo knew that using duct tape did not work, and he pointed to SMG's provision of cases of duct tape to the Rodeo and to SMG and Rodeo personnel's practice of walking the arena and looking for areas that needed the duct tape replaced. He stated, "[T]his act clearly demonstrates that SMG and the stock show knew that the installation method used by SMG would not hold under the conditions at the stock show, and that mat[] seams would have to be taped down routinely during the event by SMG and stock show personnel." Kelley opined that using double-sided tape between the bottom of the mat and the floor would be the proper and most effective method for securing the floor mats.

8

SMG objected to Kelley's affidavit as conclusory and speculative.[2] SMG also argued, in its summary judgment reply, that Parrish presented no evidence of any of the exceptions to the general "no duty" rule for lessors of a leased premises. It argued that Parrish presented no evidence that the particular floor mat on which she tripped had been re-taped or "repaired" prior to the incident. SMG also argued that Parrish could not maintain an ordinary negligence claim against it because her alleged injury was due to a condition of the property—a corner of a floor mat that had allegedly curled up into the air—and thus her complaint was based on a premises liability theory. SMG further argued that Parrish presented no evidence that it had actual or constructive knowledge of the allegedly dangerous condition, as required for liability under a premises liability theory, as there was no testimony of prior incidents of tripping over floor mats, no evidence of prior instances of floor mats curling up as a result of duct tape coming undone, and no evidence of how long the corner of this particular mat had been curled up prior to Parrish's fall. SMG contended that, just because the duct tape "may lose its adhesion and require replacement," that did not mean that SMG had created a dangerous condition or had actual or constructive knowledge of a dangerous condition.

---

[2] The trial court did not rule on SMG's objection to Kelley's affidavit. SMG also raised its objections to Kelley's affidavit in its brief in this appeal.

9

The trial court rendered summary judgment in favor of SMG on both of Parrish's claims. This appeal followed.

## Summary Judgment

In three issues, Parrish challenges the trial court's order rendering summary judgment in favor of SMG. Specifically, Parrish argues that she raised a fact issue that SMG owed her a duty and that SMG had knowledge of the dangerous condition created when it secured the floor mats using duct tape, which had a tendency to lose its adhesion, causing the ends of the mats to curl up. Parrish also argues for a good faith extension of the law to provide that lessors owe a duty to its lessee's invitees when the lessor performs negligent work on a property and then turns the property over to a lessee.

### A. *Standard of Review*

We review a trial court's summary judgment ruling de novo. *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 583 (Tex. 2015). When a party has filed both a traditional and a no-evidence summary judgment motion, we first review the trial court's summary judgment ruling under the no-evidence standard of Texas Rule of Civil Procedure 166a(i). *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 375 (Tex. App.— Houston [1st Dist.] 2012, pet denied).

10

Following an adequate time for discovery, a party may move for summary judgment on the basis that there is no evidence of one or more essential elements of a claim on which the adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i); *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006) (per curiam). To defeat a no-evidence motion, the non-movant must produce at least a scintilla of evidence raising a genuine issue of material fact as to the challenged elements. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). "More than a scintilla of evidence exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Essex Crane*, 371 S.W.3d at 376 (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). We consider the evidence in the light most favorable to the non-movant and indulge every reasonable inference from the evidence in the non-movant's favor. *Lightning Oil*, 520 S.W.3d at 45.

A party moving for traditional summary judgment bears the burden of proving that no genuine issues of material fact exist on at least one essential element of the cause of action asserted and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lightning Oil*, 520 S.W.3d at 45. A matter is conclusively established if reasonable people could not differ as to the conclusions to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the movant meets its burden, the burden then shifts to the non-movant to raise a

11

fact issue precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

When, as here, the summary judgment order does not specify the grounds on which it was granted, the appealing party must demonstrate that none of the proposed grounds are sufficient to support the judgment. *West v. SMG*, 318 S.W.3d 430, 437 (Tex. App.—Houston [1st Dist.] 2010, no pet.). We will affirm a summary judgment ruling if any of the grounds asserted in the motion are meritorious. *Lightning Oil*, 520 S.W.3d at 45.

**B.**   ***Whether Parrish Raises a Claim for Negligence or Premises Liability***

Parrish asserted claims against SMG for both negligence and premises liability based on her fall, allegedly due to a raised corner of a rubber floor mat. As an initial matter, we address whether she may maintain claims against SMG for both negligence and premises liability or whether she raises only a premises liability claim.

The Texas Supreme Court has held that, depending on the circumstances, a person injured on another's property may have either a negligence claim or a premises-liability claim against the property owner. *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016). If the injury is the result of a contemporaneous, negligent activity on the property, then we apply ordinary negligence principles. *Id.*; *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992)

12

("Recovery on a negligent activity theory requires that the person have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity."). If the injury is the result of the property's condition, rather than an activity, then we apply premises-liability principles. *Jenkins*, 478 S.W.3d at 644.

"Although premises liability is itself a branch of negligence law, it is a 'special form' with different elements that define a property owner or occupant's duty with respect to those who enter the property." *Id.* (quoting *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005)); *see United Scaffolding, Inc. v. Levine*, —S.W.3d—, No. 15-0921, 2017 WL 2839842, at *4 (Tex. June 30, 2017) ("Negligence and premises liability claims thus are separate and distinct theories of recovery, requiring plaintiffs to prove different, albeit similar, elements to secure judgment in their favor."). Negligent activity claims "encompass[] a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury," but premises liability claims "encompass[] a nonfeasance theory based on the owner's failure to take measures to make the property safe." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010). Negligence and premises liability claims are based on independent theories of recovery, and they are not interchangeable. *United Scaffolding*, 2017 WL 2839842, at *4.

The supreme court has "consistently treated slip/trip-and-fall cases as presenting claims for premises defects." *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 386 (Tex. 2016) (noting that this holds true for cases "within and outside of the Tort Claims Act"). In these cases, "the plaintiff alleges injury as a result of a physical condition or defect left on the premises, 'not as a contemporaneous result of someone's negligence.'" *United Scaffolding*, 2017 WL 2839842, at \*5 (quoting *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997)); *Sampson*, 500 S.W.3d at 388 (noting that, in distinguishing between two theories, courts focus on whether injury occurred "by or as a contemporaneous result of the activity itself—a negligent activity—or rather by a condition created by the activity—a premises defect"). The Texas Supreme Court has "acknowledged that at some point, almost every 'artificial condition upon which a premises liability claim is based may be created by an activity,'" but it has repeatedly declined to eliminate the distinction between premises conditions and negligent activities. *United Scaffolding*, 2017 WL 2839842, at \*5 (quoting *Sampson*, 500 S.W.3d at 388). Thus, premises-liability principles "apply to a property owner who creates a dangerous condition on its property," and the claim of a person injured by the condition "remains a premises-liability claim as to the owner-creator, regardless of how the injured party chooses to plead it." *Jenkins*, 478

14

S.W.3d at 648; *see Sampson*, 500 S.W.3d at 386 ("Creative pleading does not change the nature of a claim.").

Here, Parrish has not alleged that she was injured as a result of a contemporaneous negligent activity occurring on the property, and she expressly stated in her summary judgment response that she had not asserted a negligent activity cause of action against SMG. She then stated that her negligence claim against SMG was based on "the manner in which [SMG] installed the rubber flooring for the stock show event and the manner in which it made the repairs." Parrish thus sought to hold SMG liable for her injuries caused by an allegedly dangerous condition on SMG's property: a floor mat that was allegedly improperly installed and repaired such that an end had curled up and was sticking in the air, posing a tripping hazard. This is a claim based on the allegedly unsafe and dangerous condition of the property. *See United Scaffolding*, 2017 WL 2839842, at *5; *Jenkins*, 478 S.W.3d at 644. We therefore apply premises-liability principles to Parrish's claim, and not principles of ordinary negligence. *See United Scaffolding*, 2017 WL 2839842, at *5; *Jenkins*, 478 S.W.3d at 644; *see also E.I. DuPont de Nemours & Co. v. Roye*, 447 S.W.3d 48, 57 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd) ("Because Roye's claim is based on an unsafe or dangerous condition of the property, we hold that [he is limited] to a premises liability theory of recovery.").

## C.    *Knowledge of Dangerous Condition*

Generally, a premises owner has a duty to protect invitees from, or warn them of, conditions posing unreasonable risks of harm if the owner knew of the conditions or, in the exercise of reasonable care, should have known of them. *Henkel v. Norman*, 441 S.W.3d 249, 251 (Tex. 2014) (per curiam) (citing *TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 764–65 (Tex. 2009)). To prevail on a premises liability claim, an injured invitee must establish: (1) the property owner had actual or constructive knowledge of the condition causing the injury; (2) the condition posed an unreasonable risk of harm; (3) the property owner failed to take reasonable care to reduce or eliminate the risk; and (4) the property owner's failure to use reasonable care to reduce or eliminate the risk was the proximate cause of injuries to the invitee. *Id.* at 251–52 (citing *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000)). An owner or occupier of a premises does not owe an invitee the duty of an insurer. *CMH Homes*, 15 S.W.3d at 101.

The threshold issue in a premises liability claim is whether the defendant had actual or constructive knowledge of the allegedly dangerous condition. *Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W.3d 636, 644 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). "Ordinarily, an unreasonably dangerous condition for which a premises owner may be liable is the condition at the time and place injury occurs, not some antecedent situation that produced the condition." *Brookshire Grocery Co.*

*v. Taylor*, 222 S.W.3d 406, 407 (Tex. 2006). The duty owed to an invitee in a premises-liability case "depends on actual or constructive knowledge of a dangerous condition that a reasonable inspection would reveal," and as such, "an owner or occupier is not liable for deterioration of its premises unless it knew of or by reasonable inspection would have discovered the deterioration." *CMH Homes*, 15 S.W.3d at 101. In *CMH Homes*, the Texas Supreme Court noted that "[m]any building materials will, over time, deteriorate and require repair or replacement," but it further stated that that "does not necessarily means that the owner or occupier has created a dangerous condition or that the owner has actual or constructive knowledge of a dangerous condition." *Id.*

### 1. *Actual Knowledge*

The Texas Supreme Court has noted that "there is no one test for determining actual knowledge that a condition presents an unreasonable risk of harm," but courts "generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008) (per curiam). The "actual knowledge" required for liability "is of the dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition can develop over time." *City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006) (per curiam). "Awareness of a potential problem is not actual knowledge of an existing danger."

*City of Denton v. Paper*, 376 S.W.3d 762, 767 (Tex. 2012) (quoting *Reyes v. City of Laredo*, 335 S.W.3d 605, 609 (Tex. 2010)).  The Texas Supreme Court has rejected arguments that if it is "possible to construct buildings or fixtures with materials that are impervious to wear and tear," a premises owner or occupier has a "legal duty to do so and is charged with knowledge of an unreasonable dangerous condition if it does not." *CMH Homes*, 15 S.W.3d at 102.  Premises owners and occupiers "are not strictly liable for conditions that result in injury." *Id.*

Here, Parrish argues that SMG had actual knowledge of the dangerous condition because it installed the floor mats, it knew that the floor mats had to be re-taped throughout the rodeo event, it provided twenty to twenty-five cases of duct tape to the Rodeo for this purpose, and its personnel worked with Rodeo personnel to re-tape the floor mats when pieces of duct tape would come loose.  Parrish argues that SMG "knew the duct tape would not remain adhered to the floor mats, causing them to curl up and thus needing constant re-taping."

Parrish does not argue—and she presented no summary judgment evidence— that a dangerous condition existed from the moment SMG installed the floor mats and used duct tape to secure the mats.  Instead, she argues that because duct tape would lose its adhesion over time, as a result of heavy foot traffic and contact with liquids, a dangerous condition developed when the duct tape would come loose, causing the ends of the floor mats to roll up and pose a tripping hazard.  Because of

18

this, she contends that SMG should have used another method to secure the floor mats, such as double-sided tape in between the mats and the concrete, and because it did not, it was negligent under a premises liability theory.

Fredette and DeMarco both testified in their depositions that they knew of prior instances in which the duct tape securing the floor mats had lost its adhesion and needed to be replaced during the course of the rodeo event. However, Fredette testified that he knew of no instance in which the end of a floor mat had curled up as a result of the duct tape coming loose, and DeMarco testified that, to his knowledge, Parrish's injury was the first incident in which a rodeo patron tripped over a floor mat. SMG's awareness that a potential problem with the duct tape could develop over time—that the duct tape would deteriorate, lose its adhesion, and need to be replaced—"is not actual knowledge of an existing danger" with regard to the floor mats. *See Paper*, 376 S.W.3d at 767; *Thompson*, 201 S.W.3d at 603; *CMH Homes*, 15 S.W.3d at 102 ("[K]nowledge that premises will deteriorate over time does not equate to knowledge of a condition that presents an unreasonable risk of harm."). Parrish presented no evidence that SMG personnel knew that the duct tape securing the floor mat on which she tripped had come loose and the end of the mat curled up as a result. We therefore conclude that Parrish presented no evidence that SMG had actual knowledge of the condition that caused her injury. *See Henkel*, 441 S.W.3d at 251; *Hall*, 177 S.W.3d at 644.

## 2. *Constructive Knowledge*

"Constructive knowledge is a substitute in the law for actual knowledge." *CMH Homes*, 15 S.W.3d at 102. In premises liability cases, a plaintiff can establish constructive knowledge "by showing that the condition had existed long enough for the owner or occupier to have discovered it upon reasonable inspection." *Id.* at 102–03; *see also Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002) (stating that slip-and-fall plaintiff may satisfy notice element by establishing that "it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it"). The rule requiring proof that a dangerous condition had existed for some length of time before charging a premises owner or occupier with constructive notice of the condition is "firmly rooted" in the jurisprudence of Texas. *Taylor*, 222 S.W.3d at 409; *Reece*, 81 S.W.3d at 815. Temporal evidence "best indicates whether the owner had a reasonable opportunity to discover and remedy a dangerous condition," and "[w]ithout some temporal evidence, there is no basis upon which the factfinder can reasonably assess the opportunity the premises owner had to discover the dangerous condition." *Reece*, 81 S.W.3d at 816. The plaintiff must present some proof of how long the particular hazard had been present before courts will impose liability on the premises owner for failing to discover and rectify, or warn of, the dangerous condition. *See id.*

Here, Parrish presented no evidence of the length of time that the floor mat on which she tripped had been curled up and sticking in the air. She presented no evidence that the curled-up floor mat was conspicuous, such that it could have been easily discovered by an SMG employee. *See id.* (stating that circumstances to be considered in constructive notice analysis include proximity of employee to condition as well as whether condition was conspicuous). Although she presented evidence that SMG and Rodeo employees walked around the premises and would replace duct tape that had lost its adhesion, she presented no evidence that SMG employees noticed that the duct tape on the particular floor mat had come loose or that the mat had curled up as a result. She presented no evidence of when or how the floor mat curled up. Although she presented evidence that the floor mat was also covered in wood shavings, which she argued obscured the view of the curled-up mat, she presented no evidence of how long the mat had been covered in wood shavings.[3] We therefore conclude that Parrish presented no evidence that the allegedly dangerous condition of the floor mat existed long enough that SMG had constructive notice of the condition. *See Taylor*, 222 S.W.3d at 409; *Reece*, 81 S.W.3d at 816–17; *CMH Homes*, 15 S.W.3d at 102.

---

[3] DeMarco testified that the Rodeo places pine shavings in the animal stalls and that this material "through the normal course of the daily operations [of the rodeo] sometimes get pushed around and kicked around" and end up in the aisles where patrons walk.

Because we conclude that Parrish presented no evidence that SMG had actual or constructive knowledge of the condition of the floor mat, we hold that she has presented no evidence of an essential element of her premises liability claim. *See Henkel*, 441 S.W.3d at 251; *Hall*, 177 S.W.3d at 644. We therefore hold that the trial court properly rendered summary judgment in favor of SMG on Parrish's premises liability claim.

We overrule Parrish's second issue.[4]

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Chief Justice Radack and Justices Keyes and Caughey.

---

[4] Because we hold that Parrish failed to present evidence that SMG had actual or constructive knowledge of the condition causing her injury, an essential element of her premises liability claim, we need not address Parrish's first issue—whether SMG owed her a duty—or her third issue—whether an extension of the law is needed to provide that a lessor who negligently creates a dangerous condition on its property owes a duty to the invitees of the lessor's tenant. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017) (stating that courts will affirm trial court's summary judgment ruling if any ground raised in motion is meritorious). We also need not address SMG's argument, raised in its appellate brief, that Jack Kelley's affidavit, relied upon by Parrish as summary judgment evidence, was conclusory and speculative and thus constituted no evidence.