**Martin D. DAITCH, Appellant**

v.

**MID–AMERICA APARTMENT COMMUNITIES, INC.,**
**Appellee.**

No. 05–06–00543–CV.

Court of Appeals of Texas,
Dallas.

April 14, 2008.

Neil A. Bickley, Richardson, for Appellant.

Randall G. Walters, Gregory R. Ave, Mary Stephanie Whita Urano, J. Kermit

Hill, Walters, Balido & Crain, L.L.P., Dallas, for Appellee.

Before Justices WHITTINGTON, MOSELEY, and O'NEILL.

## OPINION

Opinion by Justice MOSELEY.

Appellant Martin D. Daitch slipped and fell in the bathroom of the apartment he rented from appellee, Mid–America Apartment Communities, Inc. He sued Mid–America for personal injuries, alleging that water leaked from the air conditioning unit in the ceiling during the night and he slipped on the water the next morning, injuring his knee. Daitch alleged Mid–America was negligent in maintaining the air conditioning unit and Mid–America breached the terms of the lease. The trial court granted Mid–America's traditional and no-evidence motions for summary judgment. Daitch appeals. We affirm.

### STANDARD OF REVIEW

The standards for reviewing summary judgments are well established and we follow them in reviewing this appeal. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985) (traditional summary judgment standards of review); *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex.2003) (no-evidence summary judgment standards of review).

### BACKGROUND

Based on the summary judgment record, Daitch rented the apartment from Mid–America under a written apartment lease. Around midnight on May 30, 2003, Daitch went to the bathroom; at that time there was no problem with the air conditioner and no water was leaking onto the floor. The next morning, Daitch opened the door to the bathroom, reached for the light switch, and slipped and fell on water that had pooled on the floor. Daitch called a neighbor to help him. The neighbor's affidavit states he saw water pooled on the bathroom floor and the carpet near the bathroom floor was soaked. He saw water leak from the air conditioning unit in the ceiling. The neighbor inspected the air filter on the unit. He said it was covered with dust and dirt, clogged, and needed to be replaced. In his deposition, Daitch stated that Mid–America had notified him sometime before his fall that its maintenance people would change the air filter in the air conditioner. Daitch said neither he nor Mid–America had any notice of water leaking from the air conditioner before the time he slipped and fell.

The air conditioner had been installed about nine months before the injury and had been serviced in the fourth quarter of 2002, and the first and second quarters of 2003. Service included changing the air filter, inspecting for leaks or mold, and asking the tenant about any problems. Mid–America filed affidavits of its employees to the effect they were not aware and had not been notified of any problems or water leaking from the air conditioner between the time it was installed until after Daitch fell.

The lease provides that Daitch takes the property as is except for conditions materially affecting the health or safety of ordinary persons. It requires him to use customary diligence in maintaining the apartment, but prohibits him from performing repairs or altering the property without authorization by Mid–America. The lease requires repair requests to be made in writing, signed, and delivered to Mid–America's designated representative. Daitch is required to give prompt notice of water leaks and other conditions that pose a hazard to property, health, or safety. The lease also requires Daitch to noti-

fy Mid–America as soon as possible of any problems or malfunctions in the air conditioning and requires Mid–America to use customary diligence to make repairs. The lease permits Mid–America to enter the apartment at reasonable times to respond to Daitch's requests, make repairs, or do preventive maintenance, among other things. Mid–America also agrees to act with customary diligence to maintain fixtures, heating and air conditioning equipment, and to make all reasonable repairs, subject to Daitch's obligation to pay for damages for which he is responsible.

Mid–America filed a combined traditional and no-evidence motion for summary judgment. As to Daitch's tort claim, Mid–America asserted there was no evidence giving rise to the existence of a tort duty towards Daitch. Specifically, Mid–America asserted there was no evidence it had actual or constructive notice of a condition in Daitch's apartment that posed an unreasonable risk of harm, and the evidence conclusively established the absence of such notice. Mid–America also argued there was no evidence it failed to act reasonably to reduce or eliminate a condition in Daitch's apartment that posed an unreasonable risk of harm. As to Daitch's breach of contract claim, Mid–America argued there was no evidence it breached a contractual duty under the lease and the evidence conclusively established that Mid–America had no contractual duty to provide Daitch with a "safe living space and environment."

The trial court granted Mid–America's motions without specifying the ground or grounds on which it ruled. Daitch appeals.

### TORT CLAIM

In his first issue, Daitch contends there are material issues of fact as to his tort claims against Mid–America. Daitch argues a general negligence standard applies to this case rather than the standards for a premises liability claim by a tenant against a landlord. However, the authorities cited by Daitch do not support his contention; they merely restate the standard for a landlord's duty to a tenant and the recognized exceptions to that rule. *See Woolard v. Mobil Pipe Line Co.,* 479 F.2d 557 (5th Cir.1973); *Parker v. Highland Park, Inc.,* 565 S.W.2d 512 (Tex.1978); *Brown v. Frontier Theatres, Inc.,* 369 S.W.2d 299 (Tex.1963); *Montelongo v. Goodall,* 788 S.W.2d 717, 719 (Tex.App.-Austin 1990, no writ).

■ The essential elements of a premises liability claim are: (1) actual or constructive knowledge of a condition on the premises by the owner or occupier; (2) that the condition posed an unreasonable risk of harm; (3) that the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and (4) that the owner or occupier's failure to use such care proximately caused the plaintiff's injury. *CMH Homes, Inc. v. Daenen,* 15 S.W.3d 97, 99 (Tex.2000).

■ The existence of a legal duty under a given set of facts and circumstances is a question of law for the court. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex. 1990). Generally, a lessor has no duty to tenants or their invitees for dangerous conditions on the leased premises. *See Johnson Co. Sheriff's Posse v. Endsley,* 926 S.W.2d 284, 285 (Tex.1996). This rule originates from the notion that a lessor relinquishes possession or occupancy of the premises to the lessee. *See id.*

■ One exception to this general rule is that a lessor may be liable for injuries resulting from a defect on a portion of the premises that remains under the lessor's control. *See id.* Liability un-

der this exception is based on physical possession of common areas; the liability question "turns on who had possession of a part of the premises rather than a mere right of re-entry." *Shell Oil Co. v. Khan,* 138 S.W.3d 288, 296 (Tex.2004).

■ Daitch argues Mid–America retained control of the air conditioning unit because Mid–America installed and maintained the unit and it was located in the bathroom ceiling. However, although the air conditioning unit was installed in the bathroom ceiling, there is no evidence Mid–America retained physical possession of the air conditioner or that Daitch used it in common with others. A contractual right of re-entry by the lessor to make repairs or improvements is not a reservation of control over a portion of the premises subjecting the lessor to liability. *See Shell Oil Co.,* 138 S.W.3d at 297 (citing *Flynn v. Pan American Hotel Co.,* 143 Tex. 219, 183 S.W.2d 446 (1944)).

■ Another exception to the no-duty rule is that a landlord who agrees to repair the leased property owes a duty to exercise ordinary care. *Montelongo,* 788 S.W.2d at 719. "Because the duty arises out of the existence of the contract to repair, the contract defines the extent of the duty." *Id.* Unless the contract provides that the landlord shall inspect the land to ascertain the need of repairs, a contract to keep the premises in safe condition subjects the landlord to liability only if he does not exercise reasonable care *after* he has notice of the need of repairs. *Id.* (landlord not liable to tenant who fell on steps leading up to rented trailer house where no evidence landlord retained control over steps and no evidence tenant notified landlord of need for repairs before she fell). Here the lease did not require Mid–America to inspect the property after the tenant took possession and required Mid–America to make repairs only on

written notice from the tenant. There is no evidence Daitch gave Mid–America written notice under the terms of the lease of a problem with the air conditioner before the incident. Thus there is no evidence Mid–America breached any duty to repair.

We conclude Daitch failed to present evidence raising an issue of material fact as to the challenged elements of his tort cause of action. We resolve Daitch's first issue against him.

BREACH OF CONTRACT CLAIM

In his second issue, Daitch contends the trial court erred in granting summary judgment on his breach of contract claim. In response to the motion for summary judgment, Daitch argued Mid–America breached an implied warranty that the premises would be habitable and fit for living, citing *Davidow v. Inwood North Professional Group–Phase I,* 747 S.W.2d 373 (Tex.1988). *Davidow* recognized an implied warranty of suitability for commercial purposes in *commercial leases* and does not apply to the residential lease in this case. However, the *Davidow* implied warranty was an expansion of the implied warranty of habitability in residential leases recognized in *Kamarath v. Bennett,* 568 S.W.2d 658, 660–61 (Tex.1978). *See Gym–N–I Playgrounds, Inc. v. Snider,* 220 S.W.3d 905, 910 (Tex.2007). Shortly after *Kamarath* was decided, the legislature superseded it by enacting a statute abrogating the implied warranty and creating a limited landlord duty to repair. *See Gym–N–I Playgrounds, Inc.,* 220 S.W.3d at 910 n. 8; McSwain and Butler, *The Landlord's Statutory Duty to Repair–Article 5236f: The Legislative Response to Kamarath v. Bennett,* 32 BAYLOR L.REV. 1, 1 (1980); *see also* TEX. PROP.CODE ANN. §§ 92.001–.061 (Vernon 2007).

Under the terms of the lease and chapter 92 of the property code, Mid–America's responsibility to make repairs was triggered by notice of the need for repairs. *See* TEX. PROP.CODE ANN. § 92.052. Daitch presented no evidence that he notified Mid–America of the condition of the air conditioner or the water leaking on the floor before the incident. We conclude Daitch failed to present evidence raising an issue of material fact on the challenged elements of the breach of contract claim. We resolve his second issue against him.

We affirm the trial court's order.