**Concurring opinion issued November 17, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00651-CV

———————————

**IRMA K. ORTEGA, Appellant**

**V.**

**ERNEST DIXON MURRAH D/B/A MURRAH PROPERTIES, Appellee**

On Appeal from the 234th District Court
Harris County, Texas
Trial Court Cause No. 2013-17308

## CONCURRING OPINION

This is an important case in the underdeveloped and evolving area of law regarding the duties of landlords to tenants. Because I disagree with the majority's analysis of the law, and, in particular, with its analysis of the duties of the landlord

to the tenant under the terms of the Lease and of Subchapter B, section 92.052 of the Property Code, I respectfully concur in the judgment only.

In this premises defect claim brought by a tenant—appellant, Irma K. Ortega—against her landlord—appellee, Ernest Dixon Murrah *d/b/a* Murrah Properties—the trial court granted summary judgment in favor of Murrah, rendering a take-nothing judgment against Ortega. In six issues, Ortega argues that the trial court erred in granting summary judgment to Murrah because Murrah owed Ortega a duty to repair the sink and his failure to repair proximately caused her injury.

I agree with the majority that, under the facts of this case and the applicable law, Murrah had no duty to repair the sink in Ortega's rented residence and no legal responsibility for her injuries. However, I also believe that he *would* have had such a duty under both the Lease and Chapter 92, Subchapter B of the Property Code had Ortega given him the required written notice. Therefore, I concur in the judgment only.

## Background

Ortega sued her landlord, Murrah, for injuries she sustained when she slipped on a wet floor in the home that she leased from Murrah.[1] She alleged that "[t]he drainpipe under the kitchen sink of the residence would come loose allowing water

---

[1] The home that Ortega leased was described in the lease as a "single family dwelling."

2

to leak on the floor in the kitchen and dining room areas." She asserted that she had informed Murrah of the condition, and he had promised to fix it but had failed to do so. Ortega alleged that on January 6, 2012,

> [Ortega] needed to use the sink . . . and attempted to keep the pipe in place by putting an object under it to keep it in place. This did not work and water leaked. [Ortega] began mopping up the water and slipped and fell on the wet floor. [She] was not fully recovered from the injuries she sustained in this incident when on May 9, 2012, the knee of the same leg that [she] broke when she fell in January, buckled causing her to fall.

She asserted that Murrah's negligent conduct in failing to repair the sink created an unreasonably dangerous condition on the property, that Murrah knew or should have known of the danger, and that he failed to exercise ordinary care by failing to make the condition reasonably safe. Ortega asserted that she was an invitee at the time. She sought $1 million in damages for her bodily injuries, medical care, and physical pain and mental anguish. Ortega subsequently amended her petition to allege that Murrah "had a duty to make repairs, arising from his undertaking to do so, and pursuant to [section] 92.052 of the Property Code."

Murrah generally denied Ortega's allegations and asserted that "the incident [at] issue was caused, in whole or in part, by the contributory negligence and comparative fault" of Ortega. He also moved for traditional summary judgment, asserting that (1) "a lessor such as [Murrah] generally has no duty to tenants for dangerous conditions on rented property (except in circumstances which are

3

inapplicable to this situation)"; (2) the Lease did not obligate Murrah to make repairs unless Ortega notified him in writing of the need for repairs, and no such notice was provided; and (3) "because Ms. Ortega was aware of the water on the floor and had already mopped up the water . . . no act or omission of [Murrah's] . . . [was] the legal proximate cause of [Ortega's] slip and fall."

The summary judgment evidence showed that, in July 2011, Ortega entered into a residential real estate lease with Murrah (the Lease). The Lease obligated Ortega, as the tenant, to "[k]eep all plumbing fixtures in the Premises as clean as its condition permits," "[u]se all electrical, plumbing sanitary, heating, ventilating, air-conditioning and other facilities and appliances, in the Premises in a reasonable manner," and "[n]ot deliberately or negligently destroy, deface, damage, impair or remove a part of the Premises, or knowingly permit any other person to do so." The Lease further provided that Ortega was responsible for paying for repairs, including plumbing repairs, "resulting from abuse, neglect, and/or ignorance."

In addition, the Lease contained a provision regarding the "Present and Continuing Habitability" of the premises. It stated in relevant part, that "[Ortega] had inspected the Premises and fixtures . . . and acknowledges that the Premises are in a reasonable and acceptable condition of habitability for their intended use." The parties agreed that "[i]f the condition changes so that, in [her] opinion, the habitability and rental value of the Premises are adversely affected, [she] shall

4

promptly provide reasonable notice to [Murrah]." The Lease also contained a provision requiring written notices that stated, "Notices under this Lease shall not be deemed valid unless given or served in writing and forwarded by mail, postage prepaid, addressed as follows," namely, to Murrah at the same address to which the rent was paid and to the Ortegas at their rented residence.

At the time the Lease was signed and the Ortegas moved in, the sink was working properly and the residence was in a habitable condition. Murrah gave the Ortegas his business card with a telephone number on it and told them to call if anything needed repair. Ortega testified in her deposition that she first noticed a leak under the sink in October 2011, and her husband called and spoke to Murrah's wife to explain that there was "some dampness" under the sink. Murrah's wife stated that she would send Murrah to repair the sink, but that never happened. The leak worsened, and Ortega's husband again called and spoke to Murrah's wife regarding the leak. Ortega stated that "[a]fter a while, I just got a cup and I put it underneath the pipe [to] hold it in place" and that when nobody came to fix the sink, she "kind of got used to just using a little bit of water at the time and washing the dishes."

Ortega testified that her husband called and spoke to Murrah's wife on at least one other occasion, and she stated that she told Murrah's daughter about the broken pipe. Ortega asked Murrah's daughter to tell Murrah about the broken pipe, and Murrah's daughter informed Ortega that when her own air conditioner broke, she

had to hire a repairman and pay for the repairs herself. Ortega also adduced phone records showing numerous phone calls to Murrah's number between October 2011 and January 2012. Ortega testified that she continued using the sink despite the leak.

On January 6, 2012, the pipe, which Ortega had propped up to try to keep it in place while she was washing dishes, came loose while she was using the sink, flooding the kitchen. Ortega mopped up the water, but the floor was still wet. She then left the room to attend to her baby in a different room. When she walked back into the kitchen, she slipped and fell on the wet floor, breaking her leg.

Ortega later reinjured her leg. She testified at her deposition that, approximately four months after her initial fall, she again fell while in the home she rented from Murrah. She testified that her injured left leg "gave out," causing her to lose her balance and fall. She stated that she would not have fallen if not for her previous injury and that the injuries from her second fall delayed her healing.

Murrah claimed he had not gotten notice of the condition, despite the phone records showing the telephone calls made to the number he had given Ortega to report the need for repairs.

The trial court granted summary judgment in Murrah's favor without stating the grounds on which it relied and without making any findings of fact or conclusions of law. Ortega appealed.

## Summary Judgment Standard of Review

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When a summary judgment order does not specify the grounds on which it was granted, we will affirm the judgment if any one of the theories advanced in the motion is meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

Traditional summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In reviewing a traditional summary judgment, we must indulge every reasonable inference in favor of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts in favor of the nonmovant. *Valence Operating Co.*, 164 S.W.3d at 661.

When a defendant moves for traditional summary judgment, he must either: (1) disprove at least one essential element of the plaintiff's cause of action, or (2) plead and conclusively establish each essential element of his affirmative defense, thereby defeating the plaintiff's cause of action. *See Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005); *Cleveland v. Taylor*, 397 S.W.3d 683, 697 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). If the movant meets his burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam) (stating that summary judgment evidence raises fact issue if reasonable and fair-minded jurors could differ in their conclusions in light of all evidence presented); *Centeq Realty, Inc.*, 899 S.W.2d at 197. To determine if the nonmovant raised a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Fielding*, 289 S.W.3d at 848 (citing *City of Keller*, 168 S.W.3d at 827); *Cleveland*, 397 S.W.3d at 697. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)); *Cleveland*, 397 S.W.3d at 697.

**Landlord's Duties to Tenant**

Ortega sued Murrah for negligence and premises liability, and Murrah moved for summary judgment, arguing that he owed Ortega no duty to repair and that, even

8

if he did, his failure to make repairs did not cause Ortega's injury. The majority concludes that Ortega could not establish a duty on the part of Murrah under premises defect law, and it concentrates on Ortega's other issues. Slip Op. at 5–6. As framed by the majority, these are "that Murrah had a duty to repair the kitchen sink because (1) he agreed to make repairs in the written lease, (2) he undertook a duty to make repairs in a subsequent oral agreement, and (3) Texas Property Code section 92.052 imposed such a duty upon Murrah." Slip Op. at 3.

I agree that Murrah had no duty to Ortega under premises defect law. But I disagree with the majority's analysis of both the Lease and section 92.052 and specifically with its conclusions (1) that "[t]he lease did not create a duty to repair," slip op. at 6, and (2) that "Property Code Section 92.052 does not create a duty to repair," slip op. at 12. I believe that both the Lease and section 92.052 impose a duty to repair *under specified conditions* but that the conditions for imposition of the duty to repair were not met in this case. I further believe that these issues are dispositive. Therefore, I consider Ortega's argument that Murrah undertook a duty to make repairs in a subsequent oral agreement to be irrelevant and immaterial.

## A. Landlord's Duty to Tenant Under Premises Defect Law

In her first issue on appeal, Ortega argues that the trial court erred in granting Murrah summary judgment on her claims under premises defect law. Ortega asserted in her petition that Murrah's negligent conduct in failing to repair the sink

created an unreasonably dangerous condition on the property, that Murrah knew or should have known of the danger, that he failed to exercise ordinary care by failing to make the condition reasonably safe, and that his negligence in failing to repair the sink proximately caused her injuries when she slipped in the water on the floor spilled from the broken pipe and broke her leg. Thus, Ortega pled a cause of action against Murrah for negligence under a premises defect liability theory.

To prevail on her premises defect claim, Ortega had to establish the existence of a legal duty owed by Murrah to her, a breach of that duty, and damages proximately resulting from the breach. *See W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *West v. SMG*, 318 S.W.3d 430, 437 (Tex. App.—Houston [1st Dist.] 2010, no pet.). To be entitled to summary judgment on this claim, Murrah had to disprove at least one essential element of Ortega's premises defect cause of action. *See Little*, 148 S.W.3d at 381. Murrah moved for summary judgment on both the duty and the causation element of this cause of action. Because, like the majority, I would hold that Murrah had no duty to Ortega on a premises defect theory, I would not reach the issue of causation.

Ortega alleged in her petition that she was Murrah's invitee. Under premises defect law, an invitee must prove that the landowner had (1) "actual or constructive knowledge of some condition on the premises" that (2) "posed an unreasonable risk of harm"; (3) the controller of the premises failed to "exercise reasonable care to

10

reduce or eliminate the risk"; and (4) this failure proximately caused her injuries. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983). However, the pleadings and the summary judgment evidence in this case demonstrate that Ortega was Murrah's *tenant*, not his invitee. Texas law has treated the relationship between a landlord and his tenant as distinct from the duty owed by the owner or occupier of land to invitees.

Historically, under the common law a landlord had no duty to repair leased premises or to keep them safe. *See Philadelphia Indem. Ins. Co. v. White*, 490 S.W.3d 468, 478 (Tex. 2016); *Garza-Vale v. Kwiecien*, 796 S.W.2d 500, 502 (Tex. App.—San Antonio 1990, writ denied). And the Texas courts have continued to hold that, generally, a lessor has no duty to tenants or their invitees for dangerous conditions on the leased premises. *Johnson Cty. Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex. 1996); *Blancett v. Lagniappe Ventures, Inc.*, 177 S.W.3d 584, 590 (Tex. App.—Houston [1st Dist.] 2005, no pet.). "This rule stems from the notion that a lessor relinquishes possession of the premises to the lessee." *Blancett*, 177 S.W.3d at 590 (citing *Endsley*, 926 S.W.2d at 285, *Palermo v. Bolivar Yacht Basin, Inc.*, 84 S.W.3d 746, 748 (Tex. App.—Houston [1st Dist.] 2002, no pet.), and RESTATEMENT (SECOND) OF TORTS § 356 cmt. a (1965)).

However, as the majority points out, Texas courts have recognized several common-law *exceptions* to this general rule and may impose liability on a lessor for

11

injuries caused by (1) a defect that the lessor was aware of and concealed; (2) a defect on a portion of the premises that remained under the lessor's control; or (3) the lessor's negligence in making repairs. *See Blancett*, 177 S.W.3d at 590.

In *Blancett*, this Court discussed the negligent undertaking of repairs as an exception to the general rule that a lessor has no duty to his tenant for a dangerous condition on the leased premises. *See id.* We held, "[A] lessor who makes repairs may be liable for injuries resulting from the lessor's negligence in making those repairs. If the landlord agrees to repair tenant-controlled areas, the landlord must use ordinary care in making the repairs." *Id.* (citing *Endsley*, 926 S.W.2d at 285, and *Montelongo v. Goodall*, 788 S.W.2d 717, 719 (Tex. App.—Austin 1990, no writ)). We further stated that allegations that a lessor was negligent in making repairs is "a *separate* claim based, not on a dangerous condition known to or discoverable by a landowner but, instead, a claim based on a lessor's negligence in making repairs." *Id.* at 591 (emphasis added).

Here, Murrah, as property owner, had no duty to Ortega, as his tenant, for dangerous conditions on the leased premises. There was no allegation that he was aware of and concealed a dangerous condition on the premises or that he controlled the premises. Therefore, he could be liable to Ortega only if had a duty to make repairs that arose under the terms of the Lease or under section 92.052 or otherwise, undertook to make those repairs, and breached his duty of ordinary care by making

12

the repairs negligently. Therefore, I, like the majority, would overrule Ortega's first issue insofar as it pleads a premises defect theory of liability and I would turn to her remaining issues.

**B.      Landlord's Undertaking to Make Repairs In the Written Lease or in an Oral Amendment to the Lease**

In addition to arguing her premises defect claim in her first issue on appeal, Ortega contends that Murrah voluntarily undertook to repair the sink either under the terms of the written lease or orally. She argues that "the written lease contained specific items that the tenant must repair"; that "[a] reasonable tenant would infer from this that the things not listed are the responsibility of the landlord"; and that "[t]his impression is reinforced by the tenant being given the card with the phone number at the same time the tenant signs the lease." She cites *Blancett* and other cases addressing negligent undertakings to support the proposition that "[a] landlord who undertakes to provide repairs on leased premises must use care to repair conditions of which it has notice."

*1.      Landlord's Duty to Repair Under the Terms of the Written Lease*

Like the majority, I would first review the Lease to determine whether it imposed on Murrah a duty to make repairs to a leaking sink on the leased premises.

Here, the Lease obligated Ortega, as the tenant, to "[k]eep all plumbing fixtures in the Premises as clean as its condition permits," "[u]se all electrical, plumbing sanitary, heating, ventilating, air-conditioning and other facilities and

13

appliances, in the Premises in a reasonable manner," and "[n]ot deliberately or negligently destroy, deface, damage, impair or remove a part of the Premises, or knowingly permit any other person to do so." It provided that Ortega was responsible for paying for repairs, including plumbing repairs, "resulting from abuse, neglect, and/or ignorance." The majority recognizes these provisions of the Lease.

However, the Lease also contained a provision regarding the "Present and Continuing Habitability" of the premises, which the majority ignores. That provision stated, in relevant part, "[Ortega] ha[s] inspected the Premises and fixtures . . . and acknowledges that the Premises are in a reasonable and acceptable condition of habitability for their intended use." It also provided, "If the condition changes so that, in [Ortega's] opinion, the habitability and rental value of the Premises are adversely affected, [she] shall promptly provide reasonable notice to [Murrah]." And, finally, the Lease contained a provision requiring written notices to Murrah at the same address to which the rent was paid and to the Ortegas at their rented residence.

The majority holds that the Lease did *not* contain a provision requiring Murrah to make repairs and that therefore he had no duty to do so. *See* Slip Op. at 8–9 ("[W[e conclude that the terms of the lease did not impose upon Murrah a duty to repair the kitchen sink or plumbing."). I would hold that Murrah *did* have a duty under the terms of the "Present and Continued Habitability" provision in the written Lease to

14

make repairs to the leased premises upon Ortega's "promptly provid[ing] reasonable notice to [him]" that the condition of the premises had changed "so that, in [Ortega's] opinion, the habitability and rental value of the Premises [were] adversely affected."

The Lease also expressly required that written notices of such changed conditions be sent to Murrah at the address to which the rent was paid. Here, the unrefuted evidence shows that no such written notice was given. Therefore, I would hold that Murrah had no duty under the Lease to repair the broken sink, not because the Lease contained no such requirement but because the conditions necessary for that duty to attach under the habitability clause were not satisfied. I would also hold that oral notice was not enough to satisfy the notice terms of the Lease.

### 2. *Landlord's Oral Modification of the Lease*

Ortega also argues, however, that Murrah orally varied the terms of the Lease by giving her his business card and telling her to call him if he needed repairs. Murrah denies that that act orally modified the Lease.

The written Lease contained a merger clause, which provided:

> **Entire Agreement/Amendment.** This Lease Agreement contains the entire agreement of the parties and there are no other promises or conditions in any other agreement whether oral or written. This Lease may be modified or amended in writing, if the writing is signed by the party obligated under the amendment.

If a written instrument is so worded that it can be given a definite or certain legal meaning, the contract may be construed as a matter of law. *Coker v. Coker*,

650 S.W.2d 391 (Tex. 1983); *Tellepsen Builders L.P. v. Kendall/Heaton Assocs., Inc.*, 325 S.W.3d 692, 696 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). An unambiguous contract will be enforced as written, and parol evidence will not be admitted to give the contract a different meaning. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008); *Tellepsen Builders*, 323 S.W. 3d at 696.

Here, there is no ambiguity in the merger clause in the written Lease executed by the parties. Therefore, I would hold that the Lease must be enforced as written. *See Haden*, 266 S.W.3d at 450. In my view, Ortega's argument that Murrah varied the terms of the Lease orally is without merit. I would overrule Ortega's first issue.

It remains to be determined, however, whether Murrah had a *statutory* duty to repair the broken sink under chapter 92, Subchapter B, section 92.052 of the Property Code.

## C.    Landlord's Duty to Make Repairs Under Chapter 92, Subchapter B of the Texas Property Code

In her second issue, Ortega contends that Property Code section 92.052 "places a duty on a residential landlord, with notice, to repair any condition that 'affects the health and safety' of a tenant." She argues that, under section 92.052, Murrah owed her a duty to repair the broken sink and that his failure to do so proximately caused her injuries. The history of Subchapter B is instructive.

16

### 1. Brief History of Legal Duties in Landlord-Tenant Relationship

In a recent case, the Texas Supreme Court discussed the historical context of Property Code section 92.052 and the related provisions in Chapter 92, Subchapter B of the Code. *White*, 490 S.W.3d at 478–79. The supreme court observed that "[a]s part of a historically agrarian society, the relationship between a landlord and tenant was, at its most basic level, a tenant's promise to pay in exchange for the bare right to possess the property." *Id.* at 478 (citing *Kamarath v. Bennett*, 568 S.W.2d 658, 660 (Tex. 1978), *superseded by statute*, Act of May 28, 1979, 66th Leg., R.S. ch. 780, §§ 1–18, 1979 Tex. Gen. Laws 1978, *as recognized in Daitch v. Mid-Am. Apartment Comtys., Inc.*, 250 S.W.3d 191, 195 (Tex. App.—Dallas 2008, no pet.)). The court stated that, historically, "no warranty of habitability was implied upon leasing of the premises," and, absent specific lease language to the contrary, "a landlord had no obligation during the term of the lease to maintain or repair the premises," and it was the tenant's duty to make ordinary repairs. *Id.* The supreme court recognized, however, that, although "the landlord-tenant relationship had historically centered on possession, over time tenants became increasingly concerned with the condition and habitability of the rented premises." *Id.* at 479. Accordingly, the supreme court "abrogated Texas common law by finding an implied warranty of habitability in *Kamarath v. Bennett*." *Id.*

In *Kamarath,* the Texas Supreme Court assessed the "factors to be considered in the appraisal of the legal principles to be applied to the present-day relationship of landlord and tenant as applied to residential leases." These included the "public welfare" interest in requiring dwellings offered for rental to be "in a safe condition and fit for human habitation"; the landlord's superior knowledge of "the conditions of the premises he leases to the tenant," his knowledge of "[h]ousing code requirements and violations thereof"; his "better position to know of latent defects . . . which might go unnoticed by the tenant who rarely has the sufficient knowledge or experience to discover defects in wiring, plumbing or structural failures"; the appropriateness "that the landlord who will retain ownership of the premises and permanent improvements should bear the cost of repairs to make the premises safe and suitable for human habitation"; and the "much better bargaining position" of the landlord, who could take advantage of the tenant, resulting "in the rental of poor housing and violation of public policies." *Id.* at 660–61.

Because of these considerations, the supreme court opined that "in a rental of a dwelling unit, whether for a specified time or at will, there is an implied warranty of habitability by the landlord that the apartment is habitable and fit for living." *Id.* at 661. It explained, "This means that at the inception of the rental lease there are no latent defects in the facilities that are vital to the use of the premises for residential purposes and that these essential facilities will remain in a condition which makes

18

the property livable." *Id.* It also held that the tenant's obligation to pay rent was dependent on the landlord's performance under his warranty of habitability. *Id.*

Shortly after *Kamarath* was decided, however, the Texas Legislature "enacted superseding legislation . . . that 'abrogat[ed] the implied warranty and creat[ed] a limited landlord duty to repair." *White*, 490 S.W.3d at 478–79 (quoting *Daitch*, 250 S.W.3d at 195). Specifically, the legislature enacted Property Code Chapter 92, Subchapter B, to set out the landlord's duty to repair and the tenant's remedies. *See* TEX. PROP. CODE ANN. § 92.061 (West 2014) (providing that "[t]he duties of a landlord and the remedies of a tenant under this subchapter are in lieu of existing common law and other statutory law warranties and duties of landlords for maintenance, repair, security, habitability, and nonretaliation, and remedies of tenants for a violation of those warranties and duties"); *Churchill Forge, Inc. v. Brown*, 61 S.W.3d 368, 376 (Tex. 2001) ("Subchapter B sets out specific minimum standards of habitability, procedures for enforcing those standards, and remedies for a landlord's failure to meet those standards [and] is concerned with the habitability of a particular premises, and it contains both a procedural and a substantive component.") (internal citations omitted). As discussed in *White*, the legislature also restricted the freedom landlords and tenants have to shift certain repair obligations set out in Subchapter B by providing that a landlord's duties and tenant's remedies

19

under that chapter cannot be waived except under limited circumstances. *See* TEX. PROP. CODE ANN. § 92.006(c) (West Supp. 2016); *White*, 490 S.W.3d at 479–87.

I believe this case should be decided against its full historical background. That is, it should be decided not only against the terms of the Lease—here, terms that include a "Present and Continuing Habitability" provision and a written notices provision—but also against the background of *Kamarath*'s recognition of an implied warranty of habitability, as an exception to the no-duty rule and the Legislature's abrogation of that warranty and its replacement with the statutory duties of a landlord to a tenant set out in Chapter 92, Subchapter B of the Property Code. Thus, I would decide the issue of whether Murrah had a duty to repair in this case according to whether Ortega satisfied the conditions for attachment of the landlord's duty to repair under Chapter 92 and under the "Present and Continuing Habitability" and written notice provisions in the Lease.

### 2. *Landlord's Statutory Duty to Repair and Tenant's Remedies Under Subchapter B of the Property Code*

A landlord's statutory duty to repair is set out in Property Code section 92.052, which provides:

(a) *A landlord shall make a diligent effort to repair or remedy a condition if:*

*(1) the tenant specifies the condition in a notice to the person to whom or to the place where rent is normally paid*;

20

(2) the tenant is not delinquent in the payment of rent at the time notice is given; *and*

*(3) the condition:*

*(A) materially affects the physical health or safety of an ordinary tenant*; or

(B) arises from the landlord's failure to provide and maintain in good operating condition a device to supply hot water of a minimum temperature of 120 degrees Fahrenheit.

(b) *Unless the condition was caused by normal wear and tear, the landlord does not have a duty* during the lease term or a renewal or extension to repair or remedy a condition caused by:

(1) the tenant;

(2) a lawful occupant in the tenant's dwelling;

(3) a member of the tenant's family;  or

(4) a guest or invitee of the tenant.

. . . .

*(d) The tenant's notice under Subsection (a) must be in writing only if the tenant's lease is in writing and requires written notice*.

Tex. Prop. Code Ann. § 92.052(a)–(d) (West 2014) (emphasis added).

Section 92.053 then places the burden on the plaintiff tenant to show that he or she has fulfilled the conditions precedent to the landlord's duty to repair set out in section 92.052.  It provides:

(a) Except as provided by this section, *the tenant has the burden of proof in a judicial action to enforce a right resulting from the*

21

*landlord's failure to repair or remedy a condition under Section 92.052.*

(b) If the landlord does not provide a written explanation for delay in performing a duty to repair or remedy on or before the fifth day after receiving from the tenant a written demand for an explanation, the landlord has the burden of proving that he made a diligent effort to repair and that a reasonable time for repair did not elapse.

*Id.* § 92.053 (West 2014) (emphasis added).

Section 92.056[2] governs "landlord liability and tenant remedies; notice and time for repair. It provides, in relevant part, that after the tenant has given the landlord the notice to repair required by section 92.052 and has provided "subsequent written notice to repair or remedy the condition after a reasonable time to repair or remedy" has passed, the tenant may:

(1) terminate the lease;

(2) have the condition repaired or remedied according to Section 92.0561;

(3) deduct from the tenant's rent, without necessity of judicial action, the cost of the repair or remedy according to Section 92.0561; and

(4) obtain judicial remedies according to Section 92.0563.

*Id.* § 92.056(b), (e).

Section 92.0561 specifies the tenant's "repair and deduct remedies." It provides that the tenant may have the condition repaired and deduct the cost of the

---

[2] In this opinion, I cite the version of this provision that was in effect until January 1, 2016, which governs the dispute here.

22

repair from the rent payment. *Id.* § 92.0561(a). It further states that "[t]he tenant's deduction for the cost of the repair or remedy may not exceed the amount of one month's rent under the lease or $500, whichever is greater," and that such deductions may be made "as often as necessary so long as the total repairs and deductions in any one month do not exceed one month's rent or $500, whichever is greater." *Id.* § 92.0561(b)–(c) (West 2014).

Section 92.0563 sets out a tenant's judicial remedies "for a landlord's liability under section 92.0563." These include obtaining a judgment against the landlord for a civil penalty or actual damages or an order "directing the landlord to take reasonable action to repair or remedy the condition" or "reducing the tenant's rent." *Id.* § 92.0563(a) (West 2014).

Section 92.061 addresses Subchapter B's "effect on other rights":

*The duties of a landlord and the remedies of a tenant under this subchapter are in lieu of existing common law and other statutory law warranties and duties of landlords for maintenance, repair, security, habitability, and nonretaliation, and remedies of tenants for a violation of those warranties and duties. Otherwise, this subchapter does not affect any other right of a landlord or tenant under contract, statutory law, or common law that is consistent with the purposes of this subchapter or any right a landlord or tenant may have to bring an action for personal injury or property damage under the law of this state.* This subchapter does not impose obligations on a landlord or tenant other than those expressly stated in this subchapter.

*Id.* § 92.061 (emphasis added).

And section 92.006(c) provides that the requirements of Subchapter B cannot be waived except in circumstances not applicable here and not argued. *See* TEX. PROP. CODE ANN. § 92.006(c) (providing that landlord's duties and tenant's remedies under Subchapter B cannot be waived except under limited circumstances); *White*, 490 S.W.3d at 479–87.

In construing this comprehensive statutory scheme, the supreme court has held that "a landlord's liability and a tenant's repair remedies are conditioned on the existence of a duty under section 92.052." *White*, 490 S.W.3d at 485 (citing TEX. PROP. CODE ANN. §§ 92.056(a) ("A landlord's liability under this section is subject to Section 92.052(b) regarding conditions that are caused by a tenant. . . ."), (e) (providing remedies to tenant to whom landlord is liable), and .0561(d) (providing tenant repair and deduct remedies "only if . . . [t]he landlord has a duty to repair or remedy the condition under section 92.052" and other requirements are met)).

Section 92.052 imposes an obligation to repair only if all of its elements are satisfied—i.e., the tenant has provided the required notice, the tenant's rent is not delinquent, the condition materially affects the physical health or safety of the tenant, and the condition was not caused by the tenant. *Id.* at 486. Thus, the party claiming the existence of a duty under section 92.052—here, Ortega—bears the burden of proof under that section for establishing the cause of any premises condition if the

landlord's obligation to repair the condition is disputed, as it is here. *See id.* As the court observed in *White*, the burden is properly placed on the tenant because the tenant is "the party who controls the leased premises and is, therefore, in the best position to (1) avoid damage to the premises and (2) prove that another party is responsible for the damage." *Id.* It also stated that a different construction would "place[] the landlord at a distinct disadvantage in attempting to prove the cause of the damage to premises under the tenant's control, creating potentially insurmountable proof problems." *Id.* Thus, it held, "Taken together, sections 92.052 and 92.053 create a presumption that damage to premises under the tenant's control was caused by the tenant and the tenant must prove otherwise." *Id.* at 487.

One of the requirements of Subchapter B is that the tenant must provide notice to the landlord of any condition requiring repair. Section 92.052 provides that a landlord has a duty to repair if "the tenant specifies the condition in a notice to the person to whom or to the place where rent is normally paid." The notice "must be in writing only if the tenant's lease is in writing and requires written notice." TEX. PROP. CODE ANN. § 92.052(a)(1), (d). The tenant is entitled to the statutory remedies after she has given the landlord the notice to repair required by section 92.052 and has provided "subsequent written notice to repair or remedy the condition after a reasonable time to repair or remedy." *Id.* § 92.056.

Thus, for Murrah to be entitled to summary judgment on the issue of a landlord's duty to make repairs under section 92.052, it was sufficient for him to prove as a matter of law that Ortega did not give him the written notice required to trigger a landlord's statutory duty to make repairs under section 92.052. For, in that case, she would not be able to prove all the elements of her claim against him. *See Little*, 148 S.W.3d at 381 (defendant moving for traditional summary on plaintiff's claim must disprove at least one essential element of plaintiff's cause of action).

Here, it is undisputed that the sink was in working order when Ortega took possession of the home and that it first began to leak in October 2011. Ortega presented evidence that her husband called the number furnished by Murrah and spoke to Murrah's wife about the leak on numerous occasions. However, it is also undisputed that Ortega never provided written notice to Murrah regarding the defect. In fact, Ortega did not testify in her deposition that she ever spoke to Murrah at all regarding the broken sink, only that she spoke to Murrah's wife and daughter.

The Lease was in writing and provided, "Notices under this Lease shall not be deemed valid unless given or served in writing and forwarded by mail, postage prepaid, addressed as follows," namely, to Murrah at the same address to which the rent was paid and to the Ortegas at their rented residence. This requirement corresponds to section 92.052's requirement that when a condition occurs on leased premises that "materially affects the physical health or safety of an ordinary tenant,"

the tenant must "specif[y] the condition in a notice to the person to whom or to the place where rent is normally paid." *See id.* § 92.052 (a)(1), (3). Here, Ortega's Lease was in writing and required written notice as specified in the Lease. It is undisputed that Ortega neither gave nor served notice on Murrah in writing at the address to which the rent was paid. I would hold, therefore, that, under the terms of the written Lease and section 92.052, Ortega's verbal notice to Murrah's wife was insufficient to trigger Murrah's duty to repair the sink.

Moreover, even if Ortega had given Murrah adequate written notice of the broken sink at the address at which her rent was paid, she would still have had to satisfy the other conditions precedent to the attachment of Murrah's duty to repair under section 92.052. Namely, she would have had to show that she was not "delinquent in the payment of rent at the time notice [wa]s given" and that the condition was of a type that would "materially affect[] the physical health or safety of an ordinary tenant." *Id.* § 92.052(a)(1), (3) (A). And she would also have had to show that the condition was not caused by herself, "the tenant, a lawful occupant in the tenant's dwelling, a member of the tenant's family, or a guest or invitee of the tenant." *Id.* § 92.052(b); *see also id.* § 92.053 ("Except as provided by this section, the tenant has the burden of proof in a judicial action to enforce a right resulting from the landlord's failure to repair or remedy a condition under Section 92.052"). Ortega made no showing that she satisfied the conditions precedent to the attachment

of Murrah's duty to repair the broken sink. Thus, her argument that Murrah had such a duty to repair and was negligent in the performance of that duty fails.

I would overrule Ortega's second issue.

**D.     Ortega's Subsidiary Arguments That Notice Was Sufficient and that Murrah Waived Notice**

In her third issue, Ortega argues that the trial court erred in granting summary judgment because the Lease "says that any notice 'under the lease' must be in writing" but "does not say that any notice is required to get repairs." This argument misses the point. The terms of both Subchapter B and the Lease require written notice when, as here, the Lease is in writing and contains a provision requiring written notice in order for the duty to repair to attach. *See* TEX. PROP. CODE ANN. § 92.052 (d).

In her fourth issue, Ortega argues that Murrah waived the written notice provision in the Lease. However, a landlord's duties and a tenant's remedies under Subchapter B cannot be waived except under limited circumstances not applicable here. *See* TEX. PROP. CODE ANN. § 92.006(c) (West Supp. 2016); *White*, 490 S.W.3d at 479–87. Here, the Lease requires written notice to invoke the landlord's duty to make repairs to remedy a condition affecting habitability and so does Subchapter B. *See* TEX. PROP. CODE ANN. § 92.052(d). Ortega failed to comply with the written notice requirement in both Subchapter B and the Lease. Thus, Ortega's duty to repair the sink never attached.

In her fifth issue, Ortega asserts that Murrah waived any Lease provision requiring written notice of defects in the Premises by providing her with his phone number and instructing her to call if she needed any repairs; thus, he is now estopped from arguing that written notice of defects was required by the Lease. However, as discussed above, the requirements of Subchapter B cannot be waived except in circumstances not applicable here and not argued. *See* TEX. PROP. CODE ANN. § 92.006(c); *White*, 490 S.W.3d at 479–87. The fact that Murrah provided a phone number for Ortega to use in reporting a need for repair does not replace the notice requirements set out in section 92.052 and 92.056 to trigger a landlord's duty to repair and a tenant's rights to remedy a breach of that duty under Subchapter B.

I would overrule Ortega's third through fifth issues.[3]

---

[3] In her sixth issue, Ortega argues that the trial court erred in relying on *Union Pump Co. v. Allbritton*, 898 S.W.2d 773 (Tex. 1995), as cited in Murrah's motion for summary judgment. The record does not reflect that the trial court actually relied on this case in making its ruling. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004) (holding that when summary judgment order does not specify grounds on which it was granted, we will affirm if any one theory advanced in motion is meritorious). Neither the trial court nor this Court is bound to consider only the cases cited by a party; rather, we look to the issues raised and, in the context of reviewing a summary judgment ruling, review those issues de novo. *See* TEX. R. APP. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). I would overrule Ortega's sixth issue.

**E.** **Ortega's Policy Arguments That Subchapter B Provides a Remedy for her Personal Injuries**

Ortega also makes several policy arguments in her brief to support her assertion that Murrah is liable for her injuries under Chapter 92 of the Property Code, Subchapter B.

Ortega argues that failing to hold Murrah responsible for her injury leads to an absurd result: "If the tenant can go through the process set out in Chapter 92, Subchapter B, before getting injured (or killed), then the landlord is responsible, but if the tenant gets injured or killed, the landlord suddenly has no duty. Such an absurd result cannot be what the legislature intended." Ortega also argues that "[a] close look at [Property Code section 92.061], in the context of the case before this Court shows that the legislature intended to establish a duty to repair in Section 92.052 that would apply to personal injury claims, but without the other limitations in Subchapter B."

These arguments, however, misread the law. "Subchapter B sets out specific minimum standards of habitability, procedures for enforcing those standards, and remedies for a landlord's failure to meet those standards." *Brown*, 61 S.W.3d at 376 ("[S]ubchapter B is concerned with the habitability of a particular premises, and it contains both a procedural and a substantive component.") (citing TEX. PROP. CODE ANN. §§ 92.051–.061). But Subchapter B "was not intended to limit or preclude causes of action for personal injuries related to dangerous conditions on a leased

30

property." *See Moreno v. Brittany Square Assocs.*, 899 S.W.2d 261, 263 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (discussing construction of Property Code section 92.061).

Thus, while Subchapter B provides the exclusive duties and remedies regarding a landlord's duty to repair or maintain the habitability of a leased premises, the plain language of section 92.061 provides that *Subchapter B "does not affect* any other right of a landlord or tenant under contract, statutory law, or common law that is consistent with the purposes of this subchapter or *any right a landlord or tenant may have to bring an action for personal injury* or property damage under the law of this state." *See* TEX. PROP. CODE ANN. § 92.061 (emphasis added). Thus, rather than establishing a duty to repair that would apply in personal injury claims, as Ortega argues, Subchapter B establishes repair duties without affecting the already existing common-law duties governing personal injury claims.

Ortega's claim that Chapter 92 provides, or should provide, a remedy for her injuries fails because she failed to provide adequate notice of the need for repair under the terms of Chapter 92 of the Property Code—not because Murrah "suddenly has no duty." Murrah's duty to repair the premises was contingent on Ortega's compliance with the procedural requirements of Subchapter B. *See, e.g.*, TEX. PROP. CODE ANN. §§ 92.052, 92.056(b), (e); *Brown*, 61 S.W.3d at 376. But Ortega failed, as a matter of law, to show that she provided the required notice to Murrah.

Suppose, however, that Ortega had shown that she had satisfied all of the conditions precedent to trigger Murrah's duty to repair the sink, that Murrah had undertaken to repair the sink, that the repairs had been negligently made, and that Murrah's negligence—his failure to use ordinary care in repairing the sink—had created a condition that proximately caused Ortega to suffer a personal injury. Under those circumstances, Chapter 92 would not preempt any cause of action for damages for personal injury that Ortega might be able to plead and prove. *See Timberwalk Apartments Partners, Inc. v. Cain*, 972 S.W.2d 749, 755 (Tex. 1998) (concluding that "subchapter B [which includes section 92.052] was intended to govern disputes between a landlord and a tenant over repairs and not liability for personal injuries resulting from premises defects actionable under the common law."); *Blancett*, 177 S.W.3d at 590 (discussing negligent undertaking of repairs as exception to general rule that lessor has no duty to tenant for dangerous condition on leased premises and holding,"[A] lessor who makes repairs may be liable for injuries resulting from the lessor's negligence in making those repairs. If the landlord agrees to repair tenant-controlled areas, the landlord must use ordinary care in making the repairs."); *Moreno*, 899 S.W.2d at 263.

Thus, the holding of this Court affirming the trial court's summary judgment in favor of Murrah should not be read as a holding that no landlord has a duty for personal injury to his tenant, or even that Murrah had no duty to Ortega here, but

rather that Ortega's notice was insufficient to trigger Murrah's duty to repair the sink under the specific facts of this case and that she made no showing that Murrah undertook to make repairs to the sink, made the repairs negligently, and thereby created a condition that proximately caused her injuries.

## Conclusion

I concur with the majority that the trial court did not err in granting summary judgment in favor of Murrah.


Evelyn V. Keyes,
Justice

Panel consists of Justices Keyes, Huddle, and Lloyd.

Keyes, J., concurring.